648 A.2d 103

**WHEELOCK HATCHERY, INC., Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 10, 1994.

Decided Sept. 7, 1994.

344

Richard C. Rupp, for petitioner.

Christina M. Tarantelli, Asst. Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

FRIEDMAN, Judge.

Wheelock Hatchery, Inc. (Employer) appeals from an order of the Unemployment Compensation Board of Review (Board) which affirmed a referee's decision awarding benefits to James C. Sword, Jr. (Claimant) on the basis that he quit his job for cause of a necessitous and compelling nature.[1] We affirm.

The facts, as found by the Board, are as follows:

---

1. Section 402(b) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b), provides in pertinent part:

An employe shall be ineligible for compensation for any week—
. . . .
(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. . . .
43 P.S. § 802(b).
The burden of proving that the termination resulted from cause of a necessitous and compelling nature rests with the employee. *Charles v. Unemployment Compensation Board of Review*, 122 Pa.Commonwealth Ct. 439, 552 A.2d 727 (1989).

1. The claimant was last employed as a hatchery worker by Wheelock Hatchery, Inc., at a final hourly rate of $7.25 and his last day of work was June 28, 1993.

2. The claimant was absent from work with the employer's permission through July 25, 1993.

3. During this period the claimant was receiving treatment at Roxbury, a rehabilitation center for alcohol and drug abusers.

4. Claimant was initially advised by his rehab counselor to quit his employment entirely; claimant preferred to work.

5. Upon his release from rehab, claimant was advised by his rehab counselor to cut his hours back.

6. Claimant's counselor advised him to cut his hours back for the following reasons: (a) so that claimant could attend a minimum of 6 meetings of Alcoholics Anonymous; (b) because the counselor believed claimant's work environment would be a "bad trigger["]; and (c) to permit claimant a balance between work and leisure time.

7. The claimant normally worked 55 to 60 hours per week.

8. The claimant returned to work on or about July 26, 1993, and requested that his hours be reduced to 40 hours per week that would permit him the requisite time off for meetings and leisure.

9. The employer was unwilling to give the claimant 40 hours per week on a schedule that would permit claimant to meet his requirement for meetings and leisure time, and therefore the claimant resigned.

(Board's Findings of Fact, Nos. 1–9.)

 On appeal,[2] Employer argues that (1) the Board's Findings of Fact are not supported by the evidence[3] and (2)

**2.** Our scope of review is limited to determining whether constitutional rights have been violated, an error of law has been committed or whether findings of fact are supported by substantial evidence. *Frigm v. Unemployment Compensation Board of Review*, 164 Pa.Commonwealth Ct. 282, 642 A.2d 629 (1994).

**3.** With regard to its first contention, Employer's discussion evidences a misunderstanding of the roles of the referee and of the Board as well as

Claimant failed to prove that he had quit his job for compelling and necessitous reasons. We disagree.

■ Of the Board's findings, Employer appears to object only to the ninth finding of fact, arguing that both of its witnesses testified that Claimant had been offered work for 40 hours per week. Employer misses the point. The record contains conflicting testimony concerning whether Employer offered Claimant a realistic opportunity to work a 40-hour week.

For instance, Claimant testified:

C My counselor at the rehab at Roxbury didn't want me to go back to work at Wheelock.

R Why?

C Because of all the drinking and stuff going on, you know.

R All right.

C And he said that would be a bad trigger for me. So then I told him I couldn't just quit because I needed money too, you know.

R Okay, so what did you do?....

C ... It was like three days before I left, my counselor came up to me and he said, I'm going to tell you what to do and I want you to do it, and I said okay. He said, go ask

confusion over our standard for reviewing the Board's decision. In its discussion, Employer challenges the findings of both the referee and the Board. However, in an unemployment compensation case, the Board, not the referee, is the ultimate fact finder. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985). For purposes of our review here, only the Board's findings are relevant. Second, Employer argues that the *referee* capriciously disregarded Employer's evidence. Where, as here, both parties have presented evidence, the substantial evidence standard, not the capricious disregard standard, governs our review. Pursuant to this standard, we must determine whether substantial evidence in the record, taken as a whole, supports the findings of the Board. *Id.* Substantial evidence is evidence which a reasonable mind might accept as adequate to support a conclusion. *Id.*

Mr. Wheelock if he can cut your hours back. I said, I know what he's going to say. He said, just shut up and do what I tell you, you know. I told him, I bet, three times.

R All right, so what happened when you got out of rehab?

C I got out July 25; that was a Sunday. They didn't have my commencement paper typed up. I had to go back down Monday the 26th and get it. Then I left there, and then I went straight to Wheelock's and asked Victor if he could cut my hours back, and he said that wasn't going to work around here.

 . . . .

R How many hours did you want cut?

C I told him I'd work 40 hours a week for him.

R Why did you want your hours cut?

C More or less so I could, you know, follow-up on my rehabilitation and try to balance my work, you know, leisure time, and this and that. That's what they teach you down there, you know.

R Okay, and what happened?

C He said, how many hours do you want to work, or how much cutting are you talking about? I said—I told him I'd work 40 hours a week. He said, well how long do you want 40 hours a week? I'll make you work Saturday, Sunday, Mondays and Thursdays or some bullshit; I don't know. I told him it didn't matter to me what days it was, as long as it wasn't over 40 hours a week. I guess he didn't like that because then he said, well, I'll put you on nightshift by yourself. Right there is 60 hours, you know, so I didn't say yeah or no or nothing about that. And then that's when they typed up that letter. He signed it, and I signed it and I left.[4]

(R.R. at 44–45.)

 C He [Wheelock] said that—I asked him for 40 hours a week, and he said, that's not going to work around here.

4. The letter to which Claimant referred is a statement typed on Wheelock Hatchery, Inc. letterhead, dated July 26, 1993 and signed by

That's what I'm trying to get at. If he would have agreed with 40 hours, hell, I'd still be there, you know, who knows. That's all I asked him for was 40 hours, you know.

(R.R. at 46.)

With regard to the same incident, the following testimony of Employer's witness, Victor Wheelock, is pertinent:

EW1 [W]hen he came back out he asked me straight for 40 hours. And I said, Jim, I'm not sure if I can give you quite 40 hours. I said, what about weekends, what about nights, I can give you 40 hours that way. He did not answer me in a mannerism of, like, he didn't want it, but he didn't say, yeah, I would do that. I felt, coming out of rehabilitation, work is good therapy. He didn't bring anything stating from Roxbury that he should only work 40 hours for Wheelock Hatchery. I did not see anything, but I did offer him the position of weekends and nights, two nights a week and two nights on weekends. I thought it was good therapy. He turned that down, and I thought he wanted 40 hours regular dayshift time. Well, the guys that do the regular hours dayshift time are basically putting in anywhere from 50 to 55 hours, and I knew I could put him by himself in the evenings, and I knew he knew how to do the work. And I felt confident in that position for him to do it, but yet he turned that position down, and I didn't feel I had any—just a 40 hours work week. I've got 15, maybe 20; that wouldn't have been enough but he didn't ask for anything more.

(R.R. at 50.)

EL Okay. So—and your opinion then, is Mr. Wheelock, that Mr. Sword then—he essentially voluntarily quit be-

Claimant and Employer, made a part of the record as Exhibit 5, which reads:

After 30 days of Jim Sword being in Roxbury Rehabilitation due to alcohol addiction, Jim Sword returned at 9:45 AM on July 26, 1993 stating he would only work 40 hours to follow through with his rehabilitation. Victor Wheelock said he did not believe he only had 40 hours a week work for Jim Sword every week. Jim Sword then stated he could not work for Wheelock Hatchery Inc., anymore. (R.R. at 10.)

cause he could not accept what arrangements you were offering to come back to work?

EW1 That's correct.

(R.R. at 51.)

The Board resolved the conflicting evidence in the record with regard to whether Employer actually offered Claimant a 40-hour work week, by finding that "employer was unwilling to give the claimant 40 hours per week *on a schedule that would permit claimant to meet his requirement for meetings and leisure time.*" (Board's Finding of Fact, No. 9. Emphasis added.) Our review of the record convinces us that substantial evidence supports the Board's finding.[5]

We turn now to Employer's second contention: that Claimant failed to prove a necessitous and compelling reason for his quit. Initially, we note that the issue of whether a claimant terminated his employment for cause of a necessitous and compelling nature is a question of law, fully reviewable by this court. *Anchor Darling Valve Co. v. Unemployment Compensation Board of Review*, 143 Pa.Commonwealth Ct. 171, 598 A.2d 647 (1991). A necessitous and compelling cause for leaving employment arises when circumstances "produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 359, 378 A.2d 829, 832–33 (1977). Medical problems can constitute cause of a necessitous and compelling nature. *Genetin v. Unemployment Compensation Board of Review*, 499 Pa. 125, 451 A.2d 1353 (1982). However, "it was not the intent of the Act to provide health and disability benefits for an ill employee who is not physically able and available for participation in the work force." *Id.* at 129, 451 A.2d at 1355 (citations omitted). Thus, to remain eligible for benefits, an employee whose health problems prevent him from performing his regular duties, must communicate the problem to his

---

5. Employer does not appear to challenge the Board's other findings of fact. However, our review of the record indicates that they, too, are supported by substantial evidence.

employer and must be available for suitable work. *Id.* However, once the employee "has communicated his medical problem to the employer and explained his inability to perform the regularly assigned duties, an employee can do no more." *Id.* at 131, 451 A.2d at 1356. It is then up to the employer to decide whether to make a reasonable accommodation to the employee's needs.

Here, Claimant needed to limit his work hours so that he could meet his rehabilitation requirements of balancing work and leisure time and attending rehabilitation meetings. Thus, even if Employer's offer could be construed as offering a 40-hour work week, the schedule begrudgingly suggested by Employer, that such hours be put in when Claimant could work alone on nights and weekends or in four ten-hour shifts, did not reasonably accommodate Claimant's needs.[6] We con-

6. Our court has often been reluctant to grant unemployment benefits to claimants whose unemployment is due to absenteeism or other inability to work resulting from current alcohol or drug abuse on the grounds that these negative results are due to a voluntary condition. *Jamison v. Unemployment Compensation Board of Review,* 145 Pa.Commonwealth Ct. 5, 602 A.2d 420 (1992); *Katz v. Unemployment Compensation Board of Review,* 40 Pa.Commonwealth Ct. 1, 396 A.2d 480 (1979), *aff'd, Smith v. Unemployment Compensation Board of Review,* 487 Pa. 448, 409 A.2d 854 (1980). However, we recognize that a claimant who has been in a rehabilitation program may have necessitous and compelling cause for requesting an adjustment in working conditions. *See, e.g., Beattie v. Unemployment Compensation Board of Review,* 92 Pa.Commonwealth Ct. 324, 500 A.2d 496 (1985) (claimant who had returned to work after completing detoxification program for drug abuse believed he was being pressured by co-workers to resume drug use, creating emotional and psychological stress which constituted adequate health reasons for terminating employment). Here, we believe that Claimant's rehabilitation needs constitute necessitous and compelling cause for terminating employment if a suitable accommodation cannot be made. We believe that our approach is consistent with the remedial purposes of the Law, with modern medical understanding of alcoholism, and with the policy embodied in the Americans with Disabilities Act. Americans With Disabilities Act of 1990, 42 U.S.C. § 12210 (ADA). *See also,* John Henderson Reese, Jr., *Addiction As Disability: The Protection of Alcoholics and Drug Addicts Under the Americans With Disabilities Act of 1990,* 44 Vand.L.Rev. 713 (1991) (reasonable accommodation includes restructuring the particular position in question and modifying work schedules as well as making facilities physically accessible to individuals with disabilities; legislative history indicates that Congress intended ADA to apply to alcoholics as well as drug addicts; ADA

clude that the circumstances here created real and substantial pressure on Claimant to terminate his employment and that Claimant acted as a reasonable person would under the same circumstances. Thus, Claimant had cause of a necessitous and compelling nature for terminating his employment and is entitled to benefits.

Accordingly, we affirm.

## ORDER

AND NOW, this 7th day of September, 1994, the order of the Unemployment Compensation Board of Review, dated November 30, 1993, is affirmed.

PELLEGRINI, J., concurs in the result only.

protects those who have been rehabilitated or have entered rehabilitation and no longer use drugs or alcohol).