**Dale A. KARWOWSKI, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 31, 2013.

Decided Sept. 12, 2013.

Dale Karwowski, pro se.

Maria Anastasopoulos, Assistant Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Dale A. Karwowski (Claimant) petitions for review, *pro se,* of the November 14, 2012, order of the Unemployment Compensation Board of Review (UCBR) affirming the referee's decision to deny Claimant unemployment compensation (U C) benefits. The UCBR determined that Claimant was ineligible for benefits under section 402(b) of the Unemployment Compensation Law (Law)[1] because he voluntarily quit his employment without cause of a necessitous and compelling nature. We reverse.

Claimant worked for the North Carolina State Auditor General (Employer) from April 30, 2012, through May 16, 2012.[2] (UCBR's Findings of Fact, No. 1.) Claimant lived 120 miles from the jobsite and commuted five hours per day. (*Id.,* No. 2.) Claimant accepted the job knowing of the commute. (*Id.,* No. 3.)

Before starting the job, Claimant searched for an apartment closer to work but found the cost range to be too expensive for him to pay, in light of the fact that Claimant was trying to maintain his current residence.[3] (*Id.,* No. 4.) After start-

1. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b). Section 402(b) of the Law provides that an employee is ineligible for UC benefits for any week "[i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b).

2. Claimant had previously worked for Kongsberg Defense Corporation in Pennsylvania from November 16, 2008, through June 1, 2010.

3. Claimant needed to successfully complete a three- to nine-month probationary period in order to procure a permanent position. (N.T. Ex. 5 at 2.)

ing the job, Claimant continued to look for an apartment and also sought help from Employer's human resources department. (*Id.*, No. 5.)

For two weeks, Claimant completed the five-hour, round-trip commute. (N.T. at 8.) Claimant testified that he suffered severe anxiety and stress because of the commute. (*Id.*) He was vomiting at work, and his family grew concerned about his safety. (*Id.*) The travelling adversely impacted his sleep, and several times he nearly fell asleep on the drive home. (*Id.* at 9.) On May 16, 2012, Claimant voluntarily quit, telling Employer that he was taking his career in a different direction. (UCBR's Findings of Fact, No. 9.)

Claimant applied for UC benefits with the local service center, which denied benefits pursuant to section 402(b) of the Law. Claimant appealed this determination to a referee. The referee held a hearing on August 10, 2012, at which only Claimant testified and presented evidence, and affirmed the denial on September 5, 2012.

■ Claimant appealed to the UCBR. On November 14, 2012, the UCBR affirmed the referee's decision, finding Claimant ineligible for benefits under sec-

tion 402(b) of the Law. Claimant petitioned this court for review.[4]

Claimant argues that the UCBR erred in concluding that he did not have a necessitous and compelling cause for voluntarily quitting his employment. We agree.

Only Claimant testified at the hearing. Although Employer attended the hearing, Employer presented no evidence, conducted no cross-examination, and made only one short closing statement.[5] The UCBR heard no additional testimony before it rendered its decision.

■ Claimant challenges the UCBR's Finding of Fact Number 6, which states: "The claimant spoke with a human resources representative, who referred the claimant to another employee who had found an apartment near the employer's site, *at a reasonable price.*" (UCBR's Findings of Fact, No. 6 (emphasis added).) Claimant argues that no evidence supports the UCBR's introduction of the "at a reasonable price" language. We agree. Claimant testified that he could not find an affordable apartment. There was no other evidence about the cost of nearby apartments. Thus, we agree with Claimant that this finding is not supported by any evidence, and we disregard it insofar as it

---

**4.** Where, as here, the burdened party "is the only party to present evidence and did not prevail before the UCBR, our scope of review on appeal is whether the UCBR committed an error of law or capriciously disregarded the evidence." *See Eby v. Unemployment Compensation Board of Review*, 157 Pa.Cmwlth. 10, 629 A.2d 176, 178 (1993). While this formulation of the capricious disregard standard was subsumed by the Supreme Court decision in *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), it still remains viable. *Hinkle v. City of Philadelphia*, 881 A.2d 22, 27 n. 9 (Pa.Cmwlth.2005) (providing a detailed description of the proper application of the capricious disregard standard post-*Wintermyer*). Where only one party presents evidence, as is the case here, the failure to

credit such evidence is a *per se* violation of that standard. *Id.*

**5.** Employer's representative stated:

... Just one closing comment that—and Mr. Karwowski referred to it. That in any official correspondence from him, the only reason we knew for his leaving was that he wanted opportunity—well, I'll quote his letter. "I feel this opportunity may not be the direction I want to pursue in my career.["] And so we—while there may be conversations that myself and [the] HR Director are not aware of, the only official reason we knew was that he wanted to pursue a different direction in his career.

(N.T. at 11.)

implies that Claimant could afford a nearby apartment.

■■ Claimant next challenges the UCBR's Finding of Fact Number 7, which states: "The claimant did not consider sharing an apartment with a roommate." (UCBR's Findings of Fact, No. 7.) Nothing in the record indicates that Claimant did or did not consider sharing an apartment with a roommate. Moreover, nothing requires an employee to consider sharing an apartment with a roommate. Thus, we agree with Claimant that this finding is not supported by any evidence, and we disregard it.

■ Claimant also challenges the UCBR's Finding of Fact of Number 8, which states: "The claimant did not speak to his direct supervisor about the transportation problem." (UCBR's Findings of Fact, No. 8.) However, Claimant discussed the situation with his direct supervisor in order to modify his work schedule. (N.T. Ex. 5 at 2.) Employer presented no contradictory evidence at the hearing. Therefore, we agree that no evidence supports this finding, and we disregard it.

■■ The UCBR also disregarded the referee's Finding of Fact Number 6, which stated: "The claimant contacted 3 realtors for information on apartments." "The [UCBR] may not ... simply disregard findings made by the referee which are based upon consistent and uncontradicted testimony without stating its reasons for doing so." *Treon v. Unemployment Compensation Board of Review*, 499 Pa. 455, 460, 453 A.2d 960, 962 (1982). Claimant unambiguously testified that he contacted three real estate agents. (N.T. at 8.) Employer presented no contradictory evidence. If the UCBR did not credit or

believe Claimant's testimony, it needed to provide an explanation for disregarding the testimony to avoid abusing its discretion under the capricious disregard standard. *See Hinkle*, 881 A.2d at 27. Moreover, this finding of fact is not trivial or irrelevant because it highlights the efforts that Claimant made to find affordable housing near the jobsite. Thus, the UCBR erred in disregarding this finding without stating its reason for doing so, and we will consider this finding in determining whether Claimant had a necessitous and compelling reasons for voluntarily quitting.

■■ "To be eligible for unemployment benefits under Section 402(b), a claimant has the burden of establishing a necessitous and compelling reason for voluntarily terminating his or her employment." *Speck v. Unemployment Compensation Board of Review*, 680 A.2d 27, 29 (Pa.Cmwlth.1996). A claimant must demonstrate circumstances " 'which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.' " *Treon*, 499 Pa. at 462, 453 A.2d at 963 (citation omitted) (finding that commute of over 300 miles created real and substantial pressure to compel a reasonable person to terminate his employment). "The crux of an inquiry in determining whether a claimant had cause of a necessitous and compelling nature for leaving his or her work is whether the offered work was suitable." [6] *Speck*, 680 A.2d at 29–30.

In *Shaw v. Unemployment Compensation Board of Review*, 46 Pa.Cmwlth. 452, 406 A.2d 608, 609 (1979), an employee accepted a position 100 miles away from his

---

**6.** Section 4(t) of the Law lists factors to consider in determining the suitability of work including: "the distance of the available work from his residence" and "the permanency of his residence." 43 P.S. § 753(t).

residence, knowing that the commute would take two hours to complete. *Id.* The employee worked at the position for three months before resigning. *Id.* This court held that the difficult commute did not constitute a necessitous and compelling cause for voluntarily leaving employment because the employee accepted the job, and that an acceptance creates a presumption that the job is suitable. *Id.* at 609.

■ Claimant attempts to distinguish his situation from *Shaw* by noting that: (1) he commuted 40 miles farther and 60 minutes longer than the employee in *Shaw*; (2) he worked for only 13 days while the employee in *Shaw* worked for three months; and (3) adjusted for inflation, he earned less per hour than the employee in *Shaw*. The *Shaw* court reasoned that accepting a job implied an employee's acquiescence to known employment conditions, and, therefore, an acceptance indicates the suitability of the position. Here, because Claimant accepted the position knowing of the arduous commute, we do not view the relatively subtle, factual differences raised by Claimant as distinctions making *Shaw* inapplicable. Thus, because Claimant accepted the position with Employer, a presumption exists that the position was suitable.

■ However, a claimant may successfully assert that employment became unsuitable due to conditions he was not aware of when he took the job. *See, e.g., Potente v. Unemployment Compensation Board of Review*, 88 Pa.Cmwlth. 12, 488 A.2d 99, 101 (1985) (holding that employee had a necessitous and compelling reason to quit the job because it was economically unfeasible to relocate his family on the wages he was receiving.); *Long v. Unemployment Compensation Board of Review*, 82 Pa.Cmwlth. 529, 475 A.2d 190, 192 (1984) (finding necessitous and compelling cause where an employee took a job and

could not find housing after relocating). This court in *Shaw* noted that "to demonstrate his entitlement to benefits, [a claimant] must overcome that admission by showing a change in his job conditions or a deception by the employer, making him unaware, when he entered the employment relationship, of conditions which he later alleges to be onerous." *Shaw*, 406 A.2d at 609. In other words, the presumption of suitability is rebuttable.

■ "Medical problems can constitute cause of a necessitous and compelling nature." *Wheelock Hatchery, Inc. v. Unemployment Compensation Board of Review*, 167 Pa.Cmwlth. 343, 648 A.2d 103, 107 (1994) (finding necessitous and compelling cause where an employee was denied a modified schedule needed to meet requirements of his substance abuse rehabilitation). "To establish health as a compelling reason for quitting a job a claimant must: (1) offer competent testimony that adequate health reasons existed to justify termination; (2) have informed the employer of the health problem; and (3) be available, where a reasonable accommodation is made by the employer, for work which is not inimical to his health." *Ridley School District v. Unemployment Compensation Board of Review*, 161 Pa. Cmwlth. 573, 637 A.2d 749, 752 (1994).

Here, Claimant testified that after taking the job he experienced significant health problems as a result of the laborious commute. (N.T. at 8.) Employer did not contest this testimony. When Claimant accepted the job, he had been unemployed for over a year, and he was desperate enough to take a job paying him one-third of his previous salary. (N.T. at 9.) While Claimant knew that the commute would be difficult, he could not foresee that significant health complications would arise.

Claimant informed Employer of his issues, speaking to his direct supervisor and the human resources department. Claimant made significant efforts to turn an impossibly difficult situation into a manageable one by revising his work schedule, looking into transferring to a branch office, researching carpooling, and searching for affordable apartments. When these efforts proved unsuccessful, necessarily, under the circumstances, Claimant made a reasonable decision to resign due to strains on his physical and mental health.

 We recognize that Employer did not modify the conditions of Claimant's employment or deceive him; however, Claimant did not anticipate the stress and anxiety that the long daily commute would cause him. Denying Claimant UC benefits only because he initially accepted the job would penalize him for making a reason-

able effort in good faith to seek out and maintain new employment. Had Claimant declined the position, he would still be receiving UC benefits from his previous employer.[7]

Accordingly, we reverse.

Judge LEAVITT dissents.

### ORDER

AND NOW, this *12th* day of *September,* 2013, we hereby reverse the November 14, 2012, order of the Unemployment Compensation Board of Review.

---

**7.** In interpreting the Law, we recall that "an unemployed worker in a covered employment is entitled to benefits, and loses them only when he falls under the condemnation of a disqualifying provision of the [Law], *fairly,* *liberally, and broadly interpreted." Long,* 475 A.2d at 192 (citation omitted).