# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Julie M. Strunk, :
          Petitioner : 
                 :
     v. :
                 :
Unemployment Compensation :
Board of Review, : No. 2147 C.D. 2013
          Respondent : Submitted: June 20, 2014


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
              HONORABLE ROBERT SIMPSON, Judge
              HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                   FILED: July 23, 2014

      Julie M. Strunk (Claimant) petitions this Court for review of the Unemployment Compensation Board of Review's (UCBR) November 5, 2013 order affirming the Referee's decision denying Claimant unemployment compensation (UC) benefits. Claimant presents one issue for this Court's review: whether the UCBR erred in finding that Claimant voluntarily left her employment. After review, we affirm.

      Claimant worked for Quakertown Family Practice, PC (Employer) as a full-time office manager from March 6, 2011 through April 29, 2013. In early and mid-April 2013, Employer's owner Dr. Deborah Ramanathan (Dr. Ramanathan) had been critical of Claimant's attitude, failure to follow her schedule, and neglect of her job duties. Due to this dissatisfaction, Dr. Ramanathan began removing certain of Claimant's job responsibilities, but did not intend to discharge Claimant. On April 22, 2013, Claimant wrote a letter to Dr. Ramanathan responding to her criticisms and

complaining of a hostile work environment. On April 23, 2013, Dr. Ramanathan held interviews to replace two medical assistants who had recently quit, allegedly due to the hostile work environment created by Claimant. Claimant assumed that the interviews were to find her replacement, but did not ask Dr. Ramanathan for confirmation. On April 23, 2013, Claimant began removing her personal belongings from her office. On April 25, 2013, Dr. Ramanathan and Claimant had a disagreement during which Claimant told Dr. Ramanathan to discharge her if she was unhappy with Claimant's work. On April 26, 2013, Claimant wrote another letter to Dr. Ramanathan, similar to the April 22, 2013 letter, but also addressing that week's medical assistant interviews, the April 25, 2013 argument, and Claimant's perceived marginalization in the office.

On April 29, 2013, Claimant informed Dr. Ramanathan that her cancer-stricken father-in-law was being moved to hospice care. Dr. Ramanathan told Claimant that her family needed her and asked her how long she needed, stating that she would not oppose Claimant's application for UC benefits. Claimant found coverage for her office manager duties and left the office. On May 3, 2013, Claimant's father-in-law died, but Claimant never again contacted Dr. Ramanathan.

On May 12, 2013, Claimant applied for UC benefits. On June 20, 2013, the Allentown UC Service Center determined that Claimant was eligible for benefits under Section 402(e) of the UC Law (Law).[1] Employer appealed, and on August 19, 2013, a Referee held a telephone hearing. Thereafter, the Referee reversed the UC Service Center's determination, ruling that Claimant was ineligible for benefits under Section 402(b) of the Law, 43 P.S. § 802(b) (relating to voluntarily leaving work without cause of a necessitous and compelling nature). Claimant appealed to the

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (relating to willful misconduct).

UCBR, and on November 5, 2013, the UCBR affirmed the Referee's decision. Claimant appealed to this Court.[2]

Claimant contends that the UCBR erred in finding that she voluntarily left her employment. Claimant specifically argues that the UCBR's Findings of Fact 13 and 14 are not supported by the record, that Dr. Ramanathan was not credible, and that if it is determined that she voluntarily left her job, she had a necessitous and compelling reason for doing so. We disagree.

> Whether a claimant's separation from employment is the result of a voluntary action or a discharge is a question of law subject to review by this Court and must be determined from a totality of the facts surrounding the cessation of employment. A claimant seeking unemployment compensation benefits bears the burden of establishing either that (1) [her] separation from employment was involuntary or (2) [her] separation was voluntary but [she] had cause of a necessitous or compelling nature that led [her] to discontinue the relationship. In other words, in order to be eligible for [UC], the claimant bears the burden of proving separation from employment, whether voluntary or involuntary. **A finding of voluntary termination is essentially precluded unless the claimant has a conscious intention to leave [her] employment. On the other hand, to be interpreted as a discharge, the employer's language must possess the immediacy and finality of a firing.**

*Watkins v. Unemployment Comp. Bd. of Review*, 65 A.3d 999, 1004 (Pa. Cmwlth. 2013) (citations and footnote omitted; emphasis added). Here, Dr. Ramanathan testified that Claimant stated: "I quit, I quit[.]" Notes of Testimony, August 19, 2013 (N.T.) at 23; Reproduced Record (R.R.) at 26. Further, Claimant testified that when

---

[2] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence." *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014).

3

Dr. Ramanathan asked her how long she would require unemployment, "two or three months" to take care of her father-in-law, Claimant responded: "I need to – until I can find another position is all I need." N.T. at 16; R.R. at 19. Moreover, when Dr. Ramanathan specifically asked Claimant at the Referee hearing: "Did I fire you?" Claimant replied: "I assumed it was mutual." N.T. at 20; R.R. at 23. Dr. Ramanathan followed up: "So you assumed, I didn't fire you?" and Claimant rejoined: "You did not say you're fired." *Id.* Viewing the totality of the circumstances, *i.e.,* Claimant said "I quit" and she wanted unemployment "until [she could] find another position[,]" and admitted that Dr. Ramanathan "did not say you're fired[,]" Claimant did not meet her burden of establishing that her separation from employment was involuntary. N.T. at 16, 20, 23; R.R. at 19, 23, 26.

Claimant next argues that the UCBR's Findings of Fact 13 and 14 are not supported by the record. "Findings made by the [UCBR] are conclusive and binding on appeal if the record, examined as a whole, contains substantial evidence to support the findings." *Umedman v. Unemployment Comp. Bd. of Review*, 52 A.3d 558, 563-64 (Pa. Cmwlth. 2012) (quoting *Owoc v. Unemployment Comp. Bd. of Review,* 809 A.2d 441, 443 (Pa. Cmwlth. 2002)). "Substantial evidence is evidence which a reasonable mind might accept as adequate to support a conclusion." *Umedman*, 52 A.3d at 564 (quoting *Wheelock Hatchery, Inc. v. Unemployment Comp. Bd. of Review,* 648 A.2d 103, 105 n.3 (Pa. Cmwlth. 1994)). This Court has held:

> In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, in this case, the Employer, giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

UCBR Finding of Fact 13 states: "On May 3, 2013 the [C]laimant's father-in-law died, but the [C]laimant never again contacted [Dr. Ramanathan]." UCBR Dec. at 2. Claimant avers that this finding is not supported by substantial evidence because Claimant testified that she spoke to Dr. Ramanathan numerous times after May 3, 2013.

> 'The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the [UCBR] is not grounds for reversal if substantial evidence supports the [UCBR's] findings.' *Tapco, Inc. v. Unemployment Comp. Bd. of Review,* . . . 650 A.2d 1106 ([Pa. Cmwlth.] 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence.

*Middletown Twp. v. Unemployment Comp. Bd. of Review*, 40 A.3d 217, 223 (Pa. Cmwlth. 2012). Dr. Ramanathan testified at the Referee hearing that "April 29[th] was the last day [she] spoke to [Claimant]." N.T. at 22; R.R. at 25. She further reported: "And – and the day [Claimant] said I quit, I quit and (sic) I went to Pennsburg Manor[3] they said she quit [there] too. So, I understood that she was not going to come back." N.T. at 23; R.R. at 26. Viewing the evidence in the light most favorable to Employer as we must, Dr. Ramanathan's testimony supports Finding of Fact 13.

Finding of Fact 14 reads: "The [C]laimant quit because of a personality conflict with [Dr. Ramanathan]." UCBR Dec. at 2. Claimant maintains that the record does not support this finding because the working relationship between her and Dr. Ramanathan is inconsistent with a personality conflict. However, during

---

[3] According to the Referee's decision, Claimant had a second job starting in August 2012, working for Pennsburg Assisted Care where she worked about 10 hours a week. *See* Referee Dec. at 1, FOF 2.

5

Claimant's lengthy narrative explaining her job separation, she described Dr. Ramanathan's dissatisfaction with Claimant's work as well as Claimant's frustration with Dr. Ramanathan. *See* N.T. at 11-19*;* R.R. at 14-22. Specifically, Claimant testified:

> On [April] 26[th] I approached Dr. Ramanathan asking what my job description was because she's taking responsibilities away from me. She did not inform (sic) what the responsibilities were that she had taken away from me. She didn't communicate anything to me at that point in time. So I questioned her as to what my job description was and she refused to give me any insight as to – to what I was supposed to do. She just began telling me how I come and go as I please. I don't follow the schedule. That the staff was all leaving because of me, because I cause a hostile work environment and I said to her, if that's the truth then fire me. Why would you keep an employee who is creating a hostile work environment and not coming to work on time and not doing the job sheet or to our acceptability levels why would you keep that employee, so I told her to fire me, if that's the case, why wouldn't you fire me. And she continued to give me more complaints about my performance and I said look, I cannot perform my job functions if I don't know what my job functions (sic) if I don't know what my job functions are. You need to tell me what my job functions are. She dismissed me and said I have patients to see go to your room.

N.T. at 13; R.R. at 16. Claimant further expounded:

> On April 23[rd] I removed all of my personal pictures and put them all in a box because I entered the doctor's office to give her some papers and it was approximately 12:30, 1:00 that afternoon and I entered her office and found her with Jade Warshel, as well as one of the medical assistants, Meleeda Florist and they were interviewing someone. I don't know who it was, I didn't even know that they were conducting interviews. As the job – or as the office manager, that's something that I should have known about. I should have been involved with. I was not. I – it was a very stressful environment at that point in time. I assumed that, okay, they're interviewing people to be, you know, to replace me, whether that was true or not, I didn't know.

6

*Id.* Claimant further testified that she tried to "eliminate the hostility that was between her and [Dr. Ramanathan]." N.T. at 15; R.R. at 18. Finally, regarding what took place on April 29, 2013, Claimant related:

> I entered her office and I informed her that he [Claimant's father-in-law] was being placed on hospice. . . . I said, you know, **I cannot continue to come in here with everything the way it is** and I know my family needs me . . . . She looked at me, she sighed and she said Julie I never wanted it to come to this . . . .

N.T. at 16; R.R. at 19 (emphasis added). Giving Employer the benefit of all reasonable and logical inferences, this testimony illustrates that the relationship between Claimant and Dr. Ramanathan was consistent with a personality conflict, and thus supports Finding of Fact 14.

Claimant also asserts that Dr. Ramanathan was not credible. The law is well settled that "[i]n unemployment compensation matters, the [UCBR] is the ultimate fact finder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses." *Goppman v. Unemployment Comp. Bd. of Review*, 845 A.2d 946, 947 n.2 (Pa. Cmwlth. 2004) (quotation marks omitted). "In making those determinations, the [UCBR] may accept or reject the testimony of any witness in whole or in part. We will not disturb the [UCBR's] credibility determinations on appeal." *Doyle v. Unemployment Comp. Bd. of Review*, 58 A.3d 1288, 1291 n.4 (Pa. Cmwlth. 2013) (citation omitted). Here, the UCBR accepted Dr. Ramanathan's testimony; consequently, we will not disturb that determination.

Lastly, Claimant contends that if she, in fact, quit her job voluntarily she had a necessitous and compelling reason because she left in anticipation of her job being eliminated. This argument is not supported by the law or the record evidence. This Court has held:

> An employee who claims to have quit [her] job for a necessitous and compelling reason must prove that: (1)

7

circumstances existed that produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the employee acted with ordinary common sense; and (4) the employee made a reasonable effort to preserve his or her employment. Personality conflicts, absent an intolerable work atmosphere, do not amount to a necessitous and compelling cause for leaving one's employment.

*Wert v. Unemployment Comp. Bd. of Review*, 41 A.3d 937, 940 (Pa. Cmwlth. 2012) (citation omitted). Claimant herein testified that she believed based on a conversation she had with Employer's practice administrator Franklin Moses that her position was being eliminated. However, she admitted she never confirmed this belief with Dr. Ramanathan. Indeed, she conceded that when she walked in on Employer's current office manager Jade Warshel[4] and medical assistant Meleeda Forest conducting an interview, Claimant "assumed" it was "to replace [her], whether that was true or not, [she] did not know." N.T. at 13; R.R. at 16. Moreover, when asked by the Referee "if you hadn't had those conversations with Mr. Moses . . . would you have stopped working there?" Claimant responded: "No." N.T. at 19; R.R. at 22.

"[M]ere speculation about one's future job circumstances, and attendant benefits, without more, does not render a decision to voluntarily terminate employment necessitous and compelling." *Munski v. Unemployment Comp. Bd. of Review*, 29 A.3d 133, 136 (Pa. Cmwlth. 2011) (quoting *Petrill v. Unemployment Comp. Bd. of Review,* 883 A.2d 714, 717 (Pa. Cmwlth. 2005)). Here, Claimant never confirmed that her job was going to be eliminated, but rather she "assumed" that the interviews were to find her replacement without having any direct communication with Dr. Ramanathan. Because Claimant failed to present evidence establishing the required elements to prove a necessitous and compelling reason to leave her employment, this argument cannot stand.

---

[4] Jade Warshel was Employer's office manager at the time of the Referee hearing.

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Julie M. Strunk,                          :
                Petitioner    :
                             :
         v.                           :
                             :
Unemployment Compensation    :
Board of Review,               :    No. 2147 C.D. 2013
                Respondent    :

## O R D E R

AND NOW, this 23rd day of July, 2014, the Unemployment Compensation Board of Review's November 5, 2013 order is affirmed.

                           _____

                           ANNE E. COVEY, Judge