# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin E. Jacobs,            :
                  Petitioner       :
                             :
            v.                 :
                             :
Unemployment Compensation   :
Board of Review,            :   No. 484 C.D. 2015
            Respondent   :   Submitted: September 11, 2015


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
               HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE ANNE E. COVEY, Judge


OPINION BY
JUDGE COVEY                       FILED: December 21, 2015


       Kevin E. Jacobs (Claimant) petitions this Court, pro se, for review of the Unemployment Compensation (UC) Board of Review's (UCBR) March 11, 2015 order affirming the Referee's decision denying him UC benefits under Section 402(b) of the UC Law (Law).[1]  The sole issue before this Court is whether the UCBR erred when it concluded that Claimant voluntarily quit his employment without a necessitous and compelling reason.  After review, we reverse.

       Claimant worked for staffing agency Bridgeview Partners (Employer) from August 4, 2014 through September 15, 2014.  Claimant accepted an assignment and signed a subcontractor agreement (Agreement) to work 40 hours per week as a help desk analyst for Independence Blue Cross for 12 months at a rate of $18.00 per hour.  Claimant testified that, at the time he executed the Agreement, his understanding was that he would be paid on the 15th and the last day of each month.

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b) (relating to ineligibility for UC benefits "due to voluntarily leaving work without cause of a necessitous and compelling nature[]").

He was not paid on August 15, 2014 and, due to concern about his finances, he brought the matter to Employer's attention. Employer issued Claimant a check outside the payroll system. The same situation occurred when he was not paid on August 30, 2014. Employer informed Claimant that he would have to wait 30 days for the next check. On September 18, 2014, Claimant notified Employer that unless he received his overdue pay by September 21, 2014, he would not report to work and he would consider the Agreement terminated due to Employer's breach. By September 29, 2014 letter, Employer notified Claimant that the Agreement was terminated effective September 26, 2014.

Claimant subsequently filed for UC benefits. On October 23, 2014, the Altoona UC Service Center issued a determination finding Claimant eligible for benefits under Section 402(b) of the Law.[2] Employer appealed, and a Referee hearing was held. By December 5, 2014 decision, the Referee declared Claimant ineligible for UC benefits under Section 402(b) of the Law. Claimant appealed to the UCBR. The UCBR affirmed the Referee's decision. Claimant appealed to this Court.[3]

Claimant argues that the UCBR erred by concluding that he voluntarily quit his employment without a necessitous and compelling reason. Claimant specifically contends that since Employer's failure to pay him in a timely manner resulted in his financial hardship and, consequently, caused transportation issues, his separation was not voluntary. We agree.

---

[2] On September 8, 2014, the UC Service Center issued a determination finding Claimant eligible for benefits under Section 402(e) of the Law, 43 P.S. § 802(e) (relating to discharge for willful misconduct). The UC Service Center later vacated and then reissued its determination on October 23, 2014 finding Claimant eligible for benefits under Section 402(b) of the Law.

[3] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence." *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014).

"In unemployment compensation cases, the claimant has the burden of proving eligibility for benefits. . . . Where a claimant has voluntarily terminated his work, the claimant bears the burden of proving that such termination was with cause of a necessitous and compelling nature." *Petrill v. Unemployment Comp. Bd. of Review*, 883 A.2d 714, 716 (Pa. Cmwlth. 2005) (quoting *Pacini v. Unemployment Comp. Bd. of Review,* 518 A.2d 606, 607 (Pa. Cmwlth. 1986) (citations omitted)).

> Whether an employee has cause of a necessitous and compelling nature to quit employment is a legal conclusion subject to appellate review. In order to show necessitous and compelling cause, 'the claimant must establish that: 1) circumstances existed which produced real and substantial pressure to terminate employment; 2) like circumstances would compel a reasonable person to act in the same manner; 3) []he acted with ordinary common sense; and 4) []he made a reasonable effort to preserve h[is] employment.' *Fitzgerald v. Unemployment* [*Comp.*] [*Bd.*] *of Review,* 714 A.2d 1126, 1129 (Pa.Cmwlth.1998)[.]

*Comitalo v. Unemployment Comp. Bd. of Review*, 737 A.2d 342, 344 (Pa. Cmwlth. 1999) (citation omitted).

At the Referee hearing, Claimant testified that he was due to receive his pay for work hours between August $4^{st}$ and 12th on August 15, 2014. Claimant explained that when he did not receive his August 15, 2014 paycheck, he spoke to Employer's Sales Support Specialist Kevin Perry (Perry), Vice President of Consulting Andrew Rosenberger (Rosenberger) and Managing Partner Nick Robak. Claimant recounted that Perry, Rosenberger and Robak looked into the situation and told him that there was a payroll issue to be worked out. Claimant recalled receiving a check, issued outside Employer's payroll system, approximately 3 or 4 days later. Claimant described that the same situation occurred when his August 30th paycheck was due, but after receiving the second out-of-payroll check, Perry notified Claimant that Employer could no longer pay him in that manner and that he would have to wait

30 days (until approximately September 30, 2014) for his next check, due to "problems with the onboarding process when they first hired [him] and there was some mistakes with the way the cycles were getting in their payroll system." Certified Record (C.R.) Item 12, Notes of Testimony, December 5, 2014 (N.T.) at 8. Claimant described telling Perry that due to his family expenses and his train costs, waiting a month for his next paycheck would be a problem for him, so Perry and Rosenberger agreed to work on a solution.

Claimant recounted that he talked to Perry, Rosenberger and Robak again after he was not paid on September 15, 2014. Claimant testified that Rosenberger told him there was nothing more Employer could do, and that Employer's finance department refused to issue another non-payroll check. Claimant recalled sending Employer a notice stating that if the problem is not worked out, he would not be able to get to work due to lack of resources. Claimant asserted that he depended upon a timely paycheck "for resources to get to work and to . . . continue to work." N.T. at 6. Claimant disclosed that he eventually received his September pay on October 15, 2014.

Claimant contends that his understanding of how he would be paid initially came from Employer's representative Carrie Sweeney (Sweeney). Claimant maintains that Sweeney told him the date on which his pay commenced "depended on how fast [he] got put into their Harvest System[]." N.T. at 19. Claimant described:

> [L]et's say I work . . . [8/4] through [8/12[,] as long as everything is submitted and approved by that Friday[,] I would receive my pay on the 15th and be in their schedule. When this didn't occur[,] . . . the problems began. And I have e-mails and conversation with [Sweeney] going back and forth that mentioned, you know, when [Employer was] setting up the Harvest ID confirming that I would get paid on [8]/15 now that this is in now.

N.T. at 19. Claimant declared that although Employer initially did not claim his understanding was incorrect, "[l]ater when [he] didn't get paid and . . . [they] started talking about the problems[,] then things started to change. Then . . . [he] was getting fuzzy information." N.T. at 19. According to Employer's Team Information Sheet, paychecks are deposited "on the 15th and the last day of each month." C.R. Item 2, Team Information Sheet at 2.

Claimant acknowledged that Employer "tried [its] best to work with [him] but . . . ultimately . . . there was a lot of confusion with [its] onboarding process and [it] tried to fix it." N.T. at 20. Claimant informed the Referee that everything else about the job "worked well." N.T. at 11. Claimant submitted no documentary evidence of financial hardship.

Perry confirmed that Claimant informed Employer during the week of September 21, 2014 that he would no longer work for Employer due to "lack of timely payroll[.]" N.T. at 15. Perry also testified:

> EL [Employer's Lawyer] . . . When [Claimant] first came on board[,] were there any discussions about the timing of payment after he submitted an invoice?
>
> [Perry] There was[,] and it was communicated that it would be two weeks from when he started or when his last day of the payroll cycle would be.
>
> EL Okay.
>
> [Perry] So[,] from the first of the month to the 15th . . . , any of those hours we pay at the end of the month, last day of the month.
>
> EL Okay, so he was told from the very beginning that there would be the half-month lag so he was to submit an invoice for the 1st through the 15th and then that would be paid at the end of the month and that he was told that from the very beginning?
>
> [Perry] Yes.

5

EL Okay. And how did it come that he was -- that these special checks were cut?

[Perry] Because he was upset then we thought that there was miscommunication and we wanted to keep him happy so we . . . cut a check right after the 15th, right after that first pay period. We did that again following at the end of the month and then communicated to him we can't keep this process going. We weren't in the wrong in the first place. We were just trying to cut the checks sooner and[,] to get back on the original schedule[,] we would have to wait, you know, he was already prepaid up front so the next paycheck according to the original schedule would be September 30th.

N.T. at 16. Perry stated that Employer did everything it could do to resolve Claimant's concerns, and if Claimant had continued reporting to Independence Blue Cross, his relationship with Employer would have continued.

"In unemployment compensation matters, 'the [UCBR] is the ultimate fact finder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses.'" *Goppman v. Unemployment Comp. Bd. of Review*, 845 A.2d 946, 947 n.2 (Pa. Cmwlth. 2004) (quoting *Owoc v. Unemployment Comp. Bd. of Review,* 809 A.2d 441, 443 (Pa. Cmwlth. 2002)). "Findings made by the [UCBR] are conclusive and binding on appeal if the record, examined as a whole, contains substantial evidence to support the findings." *Umedman v. Unemployment Comp. Bd. of Review*, 52 A.3d 558, 563-64 (Pa. Cmwlth. 2012) (quoting *Owoc,* 809 A.2d at 443). "Substantial evidence is evidence which a reasonable mind might accept as adequate to support a conclusion." *Id.* at 564 (quoting *Wheelock Hatchery, Inc. v. Unemployment Comp. Bd. of Review,* 648 A.2d 103, 105 n.3 (Pa. Cmwlth. 1994)). This Court has held:

> In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, in this case, the Employer, giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

6

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

Based upon the evidence presented in this case, the UCBR found, in relevant part:

> 4. [Claimant] believed that he would be paid the 15th and the 30th of the [m]onth.
>
> 5. [Employer] informed [Claimant] that he would be paid for his first two weeks of work in a month on the 30th and every two weeks thereafter.
>
> 6. [Employer] did provide [Claimant] an early check on the first and second pay period to address [Claimant]'s confusion and concerns.
>
> 7. Thereafter[,] [Employer] informed [Claimant] he would have to be on the regular payroll schedule which would result in [him] . . . being paid two weeks later.
>
> 8. [Claimant] informed [Employer] he would require regular payments to remain working in his assignment with Independen[ce] Blue Cross.

UCBR Dec. at 1. The UCBR concluded:

> [Claimant] has unfortunately failed to meet his burden of proof in this proceeding. While [Claimant] asserted that he was not paid timely, **the [UCBR] must conclude based on the credible testimony of [Employer] that the regular pay period was to submit time for a two[-]week period to be paid the following pay period. Thus, [Claimant] would have to wait a month to be paid under the normal plan of [Employer]. Thus, this fails to establish a necessitous and compelling reason to quit**. We next turn our attention to [Claimant]'s assertion that he had bills and could not wait a month for his pay. Unfortunately, **[Claimant] has failed to provide the specific testimony and evidence that would support** such an allegation or what steps he made to address any **temporary concerns of finances** until he was on a regular pay schedule with pay

7

every two weeks.[4]  We are therefore constrained to deny benefits under Section 402(b) of the Law.

UCBR Dec. at 2 (emphasis added).

The UCBR's conclusion that Employer's failure to timely pay Claimant in this case was not a necessitous and compelling reason to quit is contrary to the law. This Court has held:

> Where an employee terminates an employment relationship because of the employer's repeated failure to pay wages in a timely manner and on an established pay day, Pennsylvania's Wage Payment and Collection Law[5] is implicated.  Section 4 of the Wage Payment and Collection Law generally provides:
>
> > It shall be the duty of every employer to notify his employes at the time of hiring of the time and place of payment and the rate of pay and the amount of any fringe benefits or wage supplements to be paid to the employe . . . or . . . for the benefit of the employe[]. . . .
>
> 43 P.S. § 260.4.  Moreover, Section 3 of the Wage Payment and Collection Law is absolutely explicit in its statement that: 'Every employer shall pay all wages . . . due to his employes on regular paydays designated in advance by the employer.'  43 P.S. § 260.3.  Thus, employees are well within their rights to demand timely payment for work performed.  Indeed, payment as agreed for services rendered is the very essence of an employment relationship, such that no *employee* can be compelled to work without payment.

---

[4] Claimant supplied e-mails of Employer's purported misrepresentations and documentation of his alleged financial hardship for the first time on appeal to the UCBR.  *See* C.R. Item 14; *see also* N.T. at 19; Claimant Br. at 10.  Although referenced therein, no such documentation was attached to his brief to this Court.  Notwithstanding, "[f]or purposes of appellate review, that which is not part of the certified record does not exist.  Documents attached to a brief as an appendix or reproduced record may not be considered by an appellate court when they are not part of the certified record." *B.K. v. Dep't of Pub. Welfare*, 36 A.3d 649, 657 (Pa. Cmwlth. 2012) (citation omitted).  Consequently, this Court would likewise be precluded from addressing those documents.

[5] Act of July 14, 1961, P.L. 637, *as amended,* 43 P.S. §§ 260.1–260.12.

8

Furthermore, Section 7 of the Wage Payment and Collection Law clearly states: 'No provision of this act shall in any way be contravened or set aside by a private agreement.' 43 P.S. § 260.7. . . . [I]t is clear that under the cited provisions of the Wage Payment and Collection Law, erratic and intermittently late payments are unacceptable as a matter of law.

Accordingly:

> This Court has held that several instances of tardy wage payments resulting in employee protest and refusal by the employer to guarantee timely payment of wages as demanded by the employee can constitute necessitous and compelling cause for that termination.

*Warwick v. Unemployment Comp. Bd. of Review,* 700 A.2d 594, 597 (Pa. Cmwlth. 1997) (citation omitted).

. . . .

This Court's opinion in *Warwick* indicates, without examination of the Wage Payment and Collection Law, that claimants must request a guarantee of adherence to a rigid payment schedule after protesting tardy payments in order to retain eligibility for unemployment compensation. *See Warwick,* 700 A.2d at 597 (citing *Koman v. Unemployment Comp. Bd. of Review,* . . . 435 A.2d 277 ([Pa. Cmwlth.] 1981)). **Given that the Wage Payment and Collection Law already requires adherence to a rigid payment schedule, we hold that it is sufficient for employees to complain of late payments, so long as the employer is afforded a reasonable opportunity to address the employee's complaints**.

Clearly, **failure to make timely payment for services rendered creates a real and substantial pressure upon an employee to terminate employment. Without question, repeat occurrences would cause a reasonable person to terminate employment**.

*Shupp v. Unemployment Comp. Bd. of Review*, 18 A.3d 462, 464-65 (Pa. Cmwlth. 2011) (emphasis added).

9

The record evidence in the instant case established that Employer failed to timely pay Claimant for his services. Claimant twice notified Employer and accepted non-payroll checks in an effort to preserve his employment. It was not until Employer notified Claimant that he would have to wait yet another 30 days for his pay that Claimant voluntarily quit. Accordingly, under the specific circumstances of this case, the UCBR erred as a matter of law by concluding that Claimant voluntarily quit his employment without a necessitous and compelling reason.

For all of the above reasons, the UCBR's order is reversed.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kevin E. Jacobs,                          :
                          Petitioner       :
                                          :
                    v.                    :
                                          :
Unemployment Compensation                 :
Board of Review,                          :        No. 484 C.D. 2015
                          Respondent       :


### O R D E R

AND NOW, this 21st day of December, 2015, the Unemployment Compensation Board of Review's March 11, 2015 order is reversed.


_____
ANNE E. COVEY, Judge