Kenneth JOHNSON, Petitioner,

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

**David Hallman, Petitioner,**

v.

**Unemployment Compensation Board of Review, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 1998.
Decided Dec. 9, 1998.

Michael W. McGurrin, Philadelphia, for petitioner.

John A. DiNome, Philadelphia, for respondent.

Before COLINS, President Judge, DOYLE, J., SMITH, J., FRIEDMAN, J., KELLEY, J., FLAHERTY, J., and LEADBETTER, J.

KELLEY, Judge.

In these consolidated appeals,[1] the issue before this court is whether a claimant who is receiving unemployment compensation benefits during a work stoppage and chooses to retire should continue receiving benefits.

Kenneth Johnson and David Hallman (hereinafter referred to collectively as claimants) appeal from two separate orders of the Unemployment Compensation Board of Review which affirm the referee's denial of benefits to claimants pursuant to section 402(b) of the Unemployment Compensation Law (Law).[2] We affirm.

---

1. These appeals were consolidated by order of this court on September 9, 1998.

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) provides that an employee who voluntarily terminates his employment without cause of a necessitous and compelling nature is ineligible for benefits.

Johnson and Hallman worked for Occidental Chemical Corporation (employer) for thirty-eight years and forty years, respectively. Both were members of the United Steelworkers of America, Local 336, which was engaged in contract negotiations with employer. The collective bargaining agreement (CBA) expired at midnight on April 30, 1996. One year later, when no agreement had been reached, employer initiated a lockout of hourly employees, which included claimants. The expired CBA between the parties provided full medical coverage to employees and their spouses during both employment and retirement. This CBA also provided that medical benefits would continue for a period of ninety days in event of a layoff, lockout or strike. During this ninety-day period, a bargaining unit employee could elect to voluntarily retire and maintain the benefits conferred by the expired CBA.

Claimants, along with the other locked-out employees applied for and received unemployment compensation benefits. However, on July 1, 1997, while the lockout was still in effect, claimants exercised their option to retire, electing to retain those benefits conferred by the expired CBA. As of claimants' retirement date of July 1, 1997, a new CBA had not yet been reached. The union and employer agreed upon a new CBA in October 1997. Employees returned to work on November 4, 1997. Thus, from after claimants' date of retirement on July 1, 1997, until November 4, 1997, they would have been in no danger of losing their unemployment compensation. Further, work would have been available to them, had they not chosen to retire.

Upon claimants' retirement, employer sought a redetermination of their unemployment benefits. Following separate hearings, the referee denied Johnson and Hallman benefits from the date of their retirement forward, reasoning that claimants failed to offer a necessitous and compelling reason for their voluntary retirement. The board affirmed.[3]

■ On appeal to this court,[4] claimants argue that the board erred as a matter of law in holding that they were no longer entitled to unemployment benefits from the time of their retirement because their unemployment was still "due to" employer's lockout. Claimants further argue that the board erred in holding that loss or reduction of medical benefits did not constitute a necessitous and compelling reason for taking retirement.

■ First, claimants contend that they are entitled to benefits despite their voluntary retirement because their unemployment was "due to" employer's lockout and not their subsequent voluntary retirement. Claimants rely on three cases, *Campbell v. Unemployment Compensation Board of Review,* 175 Pa.Super. 592, 106 A.2d 687 (Pa.Super.1954); *Hayes v. Unemployment Compensation Board of Review,* 86 Pa.Cmwlth. 114, 483 A.2d 1075 (Pa.Cmwlth.1984) and *Coleman v. Unemployment Compensation Board of Review,* 46 Pa.Cmwlth. 295, 406 A.2d 259 (Pa. Cmwlth.1979), to support their position. However, these cases were decided in a different context as these claimants were unemployed during a layoff, and not a work stoppage.

■ The Law expressly requires that a claimant's eligibility for benefits be determined on a weekly basis stating, "an employe shall be ineligible for compensation for any week ... ." 43 P.S. § 802. Acceptance of claimants' argument that eligibility for benefits be determined solely upon the initial cause of the unemployment, not only violates the language of the statute, but also fails to appreciate the policy underlying the requirement that benefits be determined on a weekly basis. The Law recognizes the potential

---

3. With respect to Johnson's appeal, upon review of the record and evidence submitted, the board issued independent findings of fact. However, with respect to Hallman's appeal, upon review of the record and the evidence submitted, the board affirmed the referee's decision without making any independent findings of fact.

4. This court's scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Kirkwood v. Unemployment Compensation Board of* Review, 106 Pa.Cmwlth. 92, 525 A.2d 841 (Pa.Cmwlth.1987).

for a change in circumstances after the initial determination, which alters the appropriateness of that initial determination.

When addressing situations where a claimant's unemployment was caused by a work stoppage resulting from a labor dispute, Pennsylvania courts have consistently required that eligibility for unemployment be determined on a week-by-week basis. *Hoffman v. Unemployment Compensation Board of Review,* 524 Pa. 470, 574 A.2d 57 (1990); *High v. Unemployment Compensation Board of Review,* 505 Pa. 379, 479 A.2d 967 (1984). A claimant's unemployment is a fluid situation and the initial cause of a work stoppage is not always controlling when determining eligibility for benefits for subsequent weeks of unemployment. In *Hoffman,* where a strike was converted to a lockout when the employer rejected the union's offer to return to work, we recognized the principle that while one party may cause the initial unemployment, subsequent conduct may shift the blame to the other party, thereby rendering a claimant ineligible for unemployment benefits to which he was initially entitled, or vice-versa.

In fact, the Supreme Court expressly rejected the viewpoint that eligibility for benefits should be determined solely on the initial cause of the unemployment stating, that "[e]ach week of unemployment compensation is the subject of a separate claim, the validity of which is determined by consideration of conditions existing within that week ... This rule is in accord with our Legislature's clear mandate, as embodied in Section 402, that all determinations of benefits eligibility be made on a week-by-week basis." *High,* 505 Pa. at 383, 479 A.2d at 968–69 (rejecting a claimant's argument that the initial cause of a work stoppage is determinative of benefit eligibility for the entire duration). Thus, when Johnson and Hallman here chose to retire during the work stoppage, their eligibility for benefits from that week forward must be considered a separate claim for unemployment benefits and analyzed under the "necessitous and compelling" standard for voluntary quits.

Johnson and Hallman each gave their reasons for retiring. Johnson retired because: 1) he believed that medical benefits provided by employer during the lockout would expire on August 1, 1997; and 2) that he feared the medical benefits provided under a new CBA would be significantly curtailed. Hallman retired to preserve the medical benefits for which he was eligible under the previous contract because he too believed that the medical benefits provided under a new CBA would be significantly curtailed.

The board determined that the reasons given by claimants for voluntarily retiring did not constitute "necessitous and compelling" reasons for severing the employment relationship. We agree.

In order to be entitled to unemployment benefits upon voluntarily retiring, a claimant must prove that he acted with ordinary common sense in retiring and made reasonable efforts to preserve the employment relationship. *Stiffler v. Unemployment Compensation Board of Review,* 64 Pa. Cmwlth. 44, 438 A.2d 1058 (Pa.Cmwlth.1982).

First, we note that on the day claimants elected to retire, they were not faced with the immediate threat of loss of medical benefits, as the CBA was not due to expire for another month. Second, with respect to Johnson, Johnson only considered his option of medical coverage under federal COBRA, which he determined would be unfeasible because of the cost and thus, he elected to retire. As we held in *Pacini v. Unemployment Compensation Board of Review,* 102 Pa.Cmwlth. 355, 518 A.2d 606 (Pa.Cmwlth. 1986), the potential curtailment of medical benefits during the negotiation for a new CBA does not meet the "necessitous and compelling" standard under section 402(b) of the Law.[5] Thus, similar to the situation in *Pacini,* claimants' reasons for their voluntary retirement fail to meet the "necessitous and compelling" standard. Therefore, we hold

5. In *Pacini,* a union employee chose to retire after learning that his pension benefits and compensation would be reduced in the successor CBA. One of the reasons we denied benefits was that the pressure to terminate employment was neither real nor substantial because the reductions in benefits were merely proposals.

that the board correctly determined that claimants were ineligible for benefits upon their retirement.

Accordingly, we affirm.

### ORDER

AND NOW, this 9th day of December, 1998, the orders of the Unemployment Compensation Board of Review in the above-captioned consolidated matters are hereby affirmed.

DOYLE, Judge, dissenting.

I respectfully dissent from the majority opinion because I believe that these appeals are controlled by *Campbell v. Unemployment Compensation Board of Review*, 175 Pa.Super. 592, 106 A.2d 687 (Pa.Super.1954). The majority attempts to distinguish *Campbell* from the present case because *Campbell* involved a layoff rather than a lockout. However, this distinction is not persuasive because both a layoff and a lockout involve a unilateral decision on the part of an employer to make work unavailable to a claimant. Therefore, the lockout in the present case is not a basis for distinction from *Campbell*, and I would apply *Campbell* to the present case.

Applying *Campbell*, it is undisputed that, prior to retirement, Claimants' unemployment was due to Employer's lockout, and I disagree with the majority as to the effect that Claimants' retirement had on their eligibility for benefits. As the *Campbell* Court noted:

As hereinbefore indicated, prior to July 16 the company was not able to furnish employment to the claimant ... and this was so irrespective of whether the claimant was on the active or the retired list. **Thus the claimant could not become unemployed as a result of his own voluntary act until such time as his retirement *was* the proximate cause of his unemployment** —the uncontroverted testimony indicates that July 16 was the 'time', for on that date he would have been recalled to work had he not retired. Since all the claim weeks in question were prior to July 16, the purported date of recall, the claimant must be deemed eligible for benefits since his unemployment was 'due to' lack of work at the establishment of his last employer.

*Campbell*, 106 A.2d at 689 (emphasis added). Similarly in the present case, as a result of the lockout, Employer did not, and was not in a position, to offer Claimants employment regardless of their status as retired or active. Thus, Claimants' unemployment during that time was "due to" the lockout and was not due to the Claimants' retirement.

The majority opinion states: "Further work would have been available to them, had they not chosen to retire." (Op. p. 732.) That is absolutely factually incorrect; on July 1, 1997, when Claimants chose to retire there was **no** work available for them because Occidental Chemical Corporation had chosen to engage in a lockout.

Furthermore, the majority, citing *Hoffman v. Unemployment Compensation Board of Review*, 524 Pa. 470, 574 A.2d 57 (1990), and *High v. Unemployment Compensation Board of Review*, 505 Pa. 379, 479 A.2d 967 (1984), attempts to avoid this conclusion by noting that Claimants' eligibility or ineligibility for benefits is determined on a week-to-week basis. I agree. But applying this principle, however, the majority posits that Claimants' retirement eliminated the effect of Employer's lockout and made Claimants' retirement the sole cause of their unemployment, rendering them ineligible for unemployment compensation benefits. However, *High* and the policies underlying that decision are not applicable here. *High* involved the issue of whether the Reading Education Association's rejection of the School District's offer to resume work under an expired collective bargaining agreement converted a lockout to a strike, thus eliminating the effect of the district's decision to lockout its employees. It is clear that the present case does not involve the issue of whether Occidental's lockout was converted to a strike by

Claimants' actions. Clearly, their retirement had no effect on the status of the work stoppage as a lockout, nor did it convert the lockout to a strike.

It is, of course, black letter law to state that a claimant's eligibility for benefits must be determined on a weekly basis by reference to Section 402 of the Unemployment Compensation Law[1], but if we look at the underlying facts presented in this appeal, up until the new collective bargaining agreement was signed in late October of 1997, had Claimants appeared at the gates of Occidental for work they would have been informed that the lockout initiated by Employer on April 27, 1997, was still in effect, and there was no work available. Therefore, any discussion or application of Section 402(b) of the law dealing with a "voluntary quit" and whether Claimants had a necessitous and compelling reason to quit their employment is totally irrelevant; one cannot voluntarily quit from a job which does not exist because of the employer's lockout.[2]

Accordingly, I would reverse the Unemployment Compensation Board of Review and remand the case back to the Board for a calculation of benefits.

Judge FRIEDMAN joins this dissenting opinion.

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937), 2897, *as amended*, 43 P.S. §802(b).

2. To paraphrase, and by extension, analogize *Campbell* to the case at bar: Because all the claim weeks in question were prior to November 4, the date that employees returned to work at Occidental under the new collective bargaining agreement, the Claimants must be deemed eligible for benefits since their unemployment was "due to" a lock-out at the establishment of their last employer.