**Samuel PETRILL, Petitioner**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 19, 2005.

Decided Sept. 20, 2005.

---

Samuel Petrill, petitioner, pro se.

Janet M. Tarczy and Gerard M. Mac-karevich, Harrisburg, for respondent.

Lee R. Demosky, Greensburg, for intervenor, Elliott Turbomachinery Co., Inc.

BEFORE: FRIEDMAN, Judge, LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge LEADBETTER.

Samuel Petrill, proceeding *pro se,* petitions this court for review of an Unemployment Compensation Board of Review (Board) order that determined him ineligible for benefits under Section 402(b) of the Unemployment Compensation Law (Law), 43 P.S. § 802(b), due to his decision to retire rather than risk losing health benefits he had under the Collective Bargaining Agreement (CBA) operative between his union and Elliott Turbo Machinery, his employer.[1]

The Board adopted the following factual findings of the referee, which Petrill has not specifically challenged. Petrill was a full-time worker in employer's warehouse. He worked for employer for thirty-eight years, with his last day of work being August 6, 2004. He was on a voluntary layoff from August 9 through August 30, 2004. The contract between the union and employer had expired on June 11, 2004; as of the date of the referee's hearing,[2] union and management were attempting daily to negotiate a contract.[3] While on voluntary layoff, the claimant decided that he would retire. He did so because he believed that the contract that the parties would eventually negotiate would result in his paying for hospitalization, whereas the "current" contract provides that employer pays half of hospitalization costs until age 60 and, thereafter, employer pays all of hospital-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b) (ineligibility for unemployment compensation due to voluntarily leaving work without necessitous and compelling cause).

2. The record shows this date to be October 27, 2004. *See generally* Notes of Testimony, N.T. (dated October 27, 2004).

3. In the meantime, the parties had agreed to extend their contract. *See* N.T., Testimony of Denis L. Andros (Petrill's witness/union official), at 7–8.

ization costs until such time as Medicare takes over. Specifically, the "current" contract provides that, for a person who retires at age fifty-eight, employer will pay fifty percent of his medical premiums, but that, when he turns sixty, employer will pay all medical premiums.[4] Petrill was turning sixty on December 1, 2004. There are fifteen employees in his department junior to him; moreover, continuing work was available had he chosen not to retire. Petrill received unemployment compensation benefits for the week ending September 4, 2004. Findings of Fact Nos. 1–10, Referee's decision (mailed November 19, 2004) at 1.

Accordingly, the referee determined that Petrill had voluntarily quit his employment without necessitous and compelling cause and further determined that he had received an overpayment through no fault of his own.[5]

In adopting the referee's findings and legal conclusions that Petrill was ineligible for benefits under Section 402(b) of the Law, the Board explained:

> The Board agrees with the Referee that the claimant's belief was based upon mere speculation as the exact terms of the new contract had yet to be agreed upon, the claimant's figures were averages, and the claimant has the option of continuing to work, thus increasing any amount that will be available to him upon retirement. The Board thus finds the claimant has offered insufficient competent credible evidence that his reason for retiring was necessitous and compelling.

Board decision (mailed March 24, 2005) at 1.

"In unemployment compensation cases, the claimant has the burden of proving eligibility for benefits.... Where a claimant has voluntarily terminated his work, the claimant bears the burden of proving that such termination was with cause of a necessitous and compelling nature." *Pacini v. Unemployment Comp. Bd. of Review,* 102 Pa.Cmwlth. 355, 518 A.2d 606, 607 (1986) (citations omitted). Further, this court has stated that "we must examine the circumstances surrounding each claimant's departure on an individual basis, so as to understand what exigencies he faced at the time he decided to separate from employment." *PECO Energy Co. v. Unemployment Comp. Bd. of Review,* 682 A.2d 49, 55 (Pa.Cmwlth. 1996). "In order to be entitled to unemployment benefits upon voluntarily retiring, a claimant must prove that he acted with ordinary common sense in retiring and made reasonable efforts to preserve the employment relationship." *Johnson v. Unemployment Comp. Bd. of Review,* 723 A.2d 730, 733 (Pa.Cmwlth.1998) (two cases) (citations omitted).

Our review of the record reveals that Petrill believed he stood to lose much of his health benefits upon renegotiation of the CBA between his union and employer. In this regard, Petrill explained: "[W]hat it comes down to is I felt that if I did not retire then, due to lack of progress in company negotiations, that they were going to take our insurance, the bulk of our insurance." N.T., Testimony of Samuel Petrill, at 6. He also testified: "I didn't want to take a chance on losing that. I felt that I had to retire now to preserve the benefits that I had and that the company made it known that they were not going

---

4. The record reflects that employer makes such payments under the current contract until the retiree reaches the age of 65. *See* N.T., Andros Testimony, at 8.

5. The referee determined that Petrill had received a nonfault overpayment and ordered recoupment accordingly. Referee's decision (mailed November 19, 2004) at 2.

to—they were very adamant about not providing this insurance as it was any longer." *Id.* Petrill stated that both he and his wife had "health issues." *Id.*

Moreover, Denis Andros, the union official who testified for Petrill, explained:

Their proposal, and it's still on the table, establishing health spending account [sic], puts an amount of $1,050 times your years of service into a kitty. If you have 35 years service you get $1,050 times 35 or $36,750 plus half that amount for your spouse. Totaled together it's $55,125. That amount is to be used by you and your spouse to pay premiums on health care insurance. Once that $55,000 is done, you're done.

N.T. at 8. Andros further stated that, under the current health plan, the employer's average expense amounts to $85,000 per employee. *Id.* However, Andros also testified that the union had previously rejected two of employer's offers during these contract negotiations. *Id.* at 7.

While we sympathize with Petrill's feelings of uncertainty, and the predicament that he believed himself to be in, the fact is that he chose to retire based on speculation rather than on what he actually knew to be true. The law is settled that "the potential curtailment of medical benefits during the negotiation for a new CBA does not meet the 'necessitous and compelling' standard under section 402(b) of the Law." *Johnson,* 723 A.2d at 733 (citing *Pacini*) (footnote omitted). The fact that, here, Petrill, who was represented by a union, chose to retire when he faced merely a *proposal* to erode his health benefit takes this case out of the realm of our decision in *McCarthy v. Unemployment Comp. Bd. of Review,* 829 A.2d 1266 (Pa.Cmwlth. 2003), where the claimant was *in fact*

faced with the decision to retire in order to avoid a substantial, unilateral change in an earned health benefit.[6] Moreover, in cases involving the voluntary termination of employment in the context of corporate downsizing, we have held that, " '[s]peculation pertaining to an employer's financial condition and future layoffs, however disconcerting, does not establish the requisite necessitous and compelling cause.' " *Renda v. Unemployment Comp. Bd. of Review,* 837 A.2d 685, 692 (Pa.Cmwlth.2003), *petition for allowance of appeal denied,* 581 Pa.685, 863 A.2d 1151 (2004) [quoting *Staub v. Unemployment Comp. Bd. of Review,* 673 A.2d 434, 437 (Pa.Cmwlth.1996)]. Essentially, the law is that mere speculation about one's future job circumstances, and attendant benefits, without more, does not render a decision to voluntarily terminate employment necessitous and compelling.

Although Petrill also complains that another employee of the company was granted benefits while he was denied them, there is no evidence on this record (only Petrill's bare allegations in his petition for review) that he and the other employee were similarly situated. We are satisfied that the Board properly applied the law to the facts of this case. For all of the above reasons, the Board's order is affirmed.

### ORDER

AND NOW, this 20th day of September, 2005, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

---

**6.** *See Pacini,* 518 A.2d at 608, wherein we noted that the fact that petitioner was a union member "rebuts petitioner's argument that the proposed terms of employment were the result of unilateral action by the employer."