# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lori A. Kelly,                                    :
                          Petitioner              :
                                                  :
           v.                                     :   No. 286 C.D. 2017
                                                  :   Argued: September 11, 2017
Unemployment Compensation                         :
Board of Review,                                  :
                          Respondent              :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge


**OPINION**
**BY JUDGE SIMPSON**                    **FILED: October 17, 2017**


Lori A. Kelly (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board) affirming a referee's decision denying her unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1]   Claimant argues she had necessitous and compelling reasons for resigning her position with the University of Pittsburgh (Employer).   In particular, Claimant asserts she resigned because of religious objections to a new project Employer assigned her to manage, which involved the collection of fetal tissue from abortions, miscarriages and fetal autopsies, including those performed at Employer's Magee-Women's Hospital (Magee).   Upon review, we are constrained to affirm on this record.

## I. Background

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(b).  Section 402(b) of the Law provides "[a]n employe shall be ineligible for compensation for any week … [i]n which [her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature …."  43 P.S. §802(b).

In this case, the Board adopted and incorporated the referee's findings and conclusions into its decision and order. The referee found the following facts. Claimant worked for Employer as a full-time project manager from April 2016 to July 19, 2016 at a rate of pay of $33 per hour. Claimant worked in Employer's Health Sciences Tissue Bank (HSTB) as a project manager. Her job duties included managing projects involving the collection and distribution of tissue for research projects. Shortly after the beginning of Claimant's employment, Employer told Claimant she would be project manager for a new tissue distribution project known as the GenitoUrinary Development Molecular Anatomy Project (GUDMAP). Federal funding for GUDMAP was pending.

Eventually, Claimant discovered the project would involve the collection and distribution of fetal tissue. Employer's sources of fetal tissue included abortions, miscarriages and fetal autopsies. Claimant's supervisor directed her to develop an online request tool for researchers' use of the distribution of tissue samples. Claimant's duties involved facilitating the distribution of tissue. However, Claimant's duties did not include the collecting or packing of samples for distribution.

Claimant is Catholic, and the practice of abortion violates her religious principles. Having learned of Employer's use of fetal tissue from abortions, Claimant consulted with her mother, a lay Eucharistic minister, for guidance.

The Board also found Claimant developed a contentious relationship with her immediate supervisor, HSTB Assistant Director Susan Kelly (Supervisor).

2

Eventually, Claimant told Supervisor that she found Supervisor's frequent contacts with her to be distracting and asked that Supervisor only communicate with her by email. When Supervisor wanted to discuss this, Claimant told her that she would not speak to her without HSTB Director Paul Wood (HSTB Director) being present. HSTB Director, located at a different hospital in Pittsburgh, advised Supervisor to ask the Director of Employee and Labor Relations, Jane Volk (Labor Director), to intervene instead.

Thereafter, Claimant met with Labor Director and Supervisor. Labor Director told Claimant that refusing to meet or speak with Supervisor would be considered insubordinate. Claimant became upset and told Labor Director that she felt Supervisor was harassing her and asked that the matter be investigated.

Claimant then asked Labor Director for assistance in transferring to another position. Labor Director told Claimant she was free to apply for other positions because she was close to the end of her probationary period. If someone offered Claimant a position, the matter could be considered at that time.

Claimant did not indicate to Supervisor or Labor Director during the meeting that she had a religious objection to being involved with a project that utilized the tissue of aborted fetuses. Employer has a policy of accommodating employees for religious reasons. Employer's HSTB could have offered Claimant other projects that did not involve fetal tissue. The next day, however, Claimant tendered her resignation letter, which stated she objected to working on a project that involved the collection and transfer of fetal tissue.

3

Following her resignation, Claimant applied for unemployment benefits, and the Department of Labor and Industry (Department) issued a notice of determination finding Claimant voluntarily quit with cause of a necessitous and compelling nature because she was unaware at hire that she would be working with aborted fetuses. The Department found this was against Claimant's religious beliefs. The Department also noted there were no alternatives to resolve the situation.

Employer appealed. The parties, represented by counsel, each presented testimony at a referee's hearing. Claimant testified on her own behalf. Employer presented testimony from Supervisor and Labor Director.

Claimant testified she worked as project manager for GUDMAP, which had not yet started operations. Prior to the end of April 2016, Claimant did not know that Employer's HSTB engaged in the collection of fetal tissue from abortions, including those performed at Magee. As project manager, Claimant would assign projects to tissue banks, including those at Magee, which would collect, store and disperse fetal material. In short, Claimant would facilitate the movement of fetal tissue and organs between Employer and other places around the country.

When Claimant, who is Catholic and opposed to abortion, learned that GUDMAP involved the collection of fetal tissue, she became very distraught. Although Claimant previously worked for Employer in projects involving human tissue, the projects used adult human tissue. Upset, Claimant called her mother for

4

spiritual advice. They prayed together on the phone a number of times. Claimant, however, continued to remain involved with GUDMAP and other projects.

On July 19, 2016, prior to GUDMAP becoming an up and running project, Claimant met with Supervisor and Labor Director to discuss some personality issues she had with Supervisor. During the meeting, Claimant asked Labor Director if she could help her find another position with Employer. However, Labor Director informed her that she could not change positions during her probationary period. Employer did not offer Claimant another position.

Although Claimant admitted she had a personality conflict with Supervisor, she would never resign her position for that reason. To that end, Claimant testified she would have liked to continue working on her relationship with Supervisor. See Referee's Hr'g, Notes of Testimony (N.T.), 10/5/16, at 19; Reproduced Record (R.R.) at 91a. Nonetheless, Claimant acknowledged she did not inform Employer of her moral and religious objections to the use of fetal tissue from abortions. Id. Claimant characterized her moral and religious feelings as an inner struggle. Id. Ultimately, when asked by her counsel whether she would accept another position with Employer if it offered her a transfer, Claimant testified: "Knowing that [Employer] through Magee-Women's Hospital is involved with abortions and fetal collections, no." N.T. at 36; R.R. at 108a.

Employer presented testimony from Supervisor, who stated she had daily conversations with Claimant. Although Claimant learned of GUDMAP's use of fetal tissue in April 2016, she did not raise any concerns about it.

Regarding the July 19, 2016 meeting with Labor Director and Claimant, Supervisor testified the meeting concerned her working relationship, specifically her ability to communicate with Claimant. Claimant did not want Supervisor calling her and asked that Supervisor email her instead. Primarily, Supervisor wanted to explain to Claimant that she needed to call her and have access to her knowledge. Supervisor described Claimant's conduct as a recurrent pushback on her authority, obstructionist behavior and an attempt to dictate their relationship. N.T. at 24; R.R. at 96a. Supervisor further testified that Claimant never raised at the meeting any religious or moral concerns regarding GUDMAP or its use of fetal tissue. Id. Rather, Claimant indicated that she needed to think about whether she still wanted to work with Supervisor because of the difficulties between them. Id.

When Supervisor came to work the next day, she learned that Claimant sent an email informing Employer that she resigned. Id. Supervisor was shocked that Claimant used GUDMAP and fetal tissue collections as her reason. Id. at 24-25; R.R. at 96a-97a. Supervisor stated that this issue could have been resolved and that continuing work remained available. Id. at 25; R.R. at 97a.

However, Supervisor recalled that Claimant did request a transfer because she did not want to work with Supervisor. Id. at 27; R.R. at 99a. Supervisor told her that this was not possible during her 90-day probationary period. Id. However, Supervisor stated that Labor Director told Claimant she could apply for any job she wanted. Id.

6

Employer also presented testimony from Labor Director. She recalled that Supervisor informed her that Claimant would not speak to her unless HSTB Director was present at the meeting. N.T. at 29; R.R. at 101a. HSTB Director works at Presbyterian Hospital while Claimant and Supervisor are located at Shadyside Hospital. Id. Therefore, HSTB Director asked Labor Director to attend the meeting. Id.

Labor Director testified that the entirety of the meeting dealt with Claimant's working relationship with Supervisor. N.T. at 30; R.R. at 102a. Claimant, a subordinate, should not be telling Supervisor to email her rather than coming to her office. Id. Claimant then complained that Supervisor bullied and intimidated her. Id. Labor Director told Claimant that she would investigate the situation. Id. Claimant, however, did not appear satisfied with the response. Id. Labor Director further testified Claimant asked for help in finding another position. Id. Labor Director told Claimant she could look for a new position but she could not transfer during her provisional employment. Id.

More importantly, Claimant did not raise any moral or religious concerns at the meeting. N.T. at 31; R.R. at 103a. At the time of Claimant's resignation, continuing work was available to her. Id.

Following the hearing, the referee issued a decision and order reversing the notice of determination and holding Claimant ineligible for benefits under Section 402(b) of the Law because she failed to establish that she left her

7

employment for a necessitous and compelling reason. To that end, the referee reasoned:

> Good faith requires that a [c]laimant show that, prior to terminating [her] employment, she communicated the problem necessitating the quit to the [e]mployer and gave the [e]mployer an opportunity to resolve the problem or offer a suitable accommodation. Although [Claimant] asked [Labor Director] for assistance in transferring to another position, she left the director with the logical understanding that she was requesting the transfer because she did not get along with [Supervisor]. The director testified that if Claimant voiced a religious objection to working in a project regarding fetal tissue, a transfer could have been arranged as an accommodation. [Supervisor] also testified that there were various projects not involving fetal tissue that [Claimant] could have been transferred to within the Department. Because [Claimant] failed to show that a request would have been futile, the Referee finds that she is ineligible for benefits under Section 402(b) of the Law.

Referee's Op., 10/12/16, at 3 (emphasis added).

Claimant appealed, and the Board affirmed. In so doing, the Board reasoned:

> In the meeting prior to [Claimant's] resignation, she did not mention any religious objections to the project to which she was assigned. That meeting primarily concerned [Claimant's] relationship with [Supervisor]. In any event, [Claimant] did not give [Employer] an opportunity to accommodate her objections. [Employer's witnesses] credibly testified [Employer] could have assigned [Claimant] to other projects that did not involve fetal tissue. The Board finds that that would have been a reasonable accommodation. Therefore, the Board adopts and incorporates the Referee's findings and conclusions ....

8

Bd.'s Op., 2/14/17 at 1 (emphasis added).  Claimant petitions for review.[2]

## II. Discussion

## A. Argument

On appeal, Claimant contends the Board erred in determining she voluntarily quit her employment without necessitous and compelling reasons where no reasonable accommodation for Claimant's sincerely held religious beliefs could be made.  To that end, Claimant asserts anything short of Employer stating it would stop engaging in the harvesting, collection and dissemination of aborted fetal tissue and parts would not resolve her deeply held religious objections to abortions and the collection of fetal tissue.

Claimant acknowledges she bears the initial burden of proof in a voluntary quit case to show she had necessitous and compelling reasons for terminating her employment.  Petrill v. Unemployment Comp. Bd. of Review., 883 A.2d 714 (Pa. Cmwlth. 2005).  In order to be entitled to unemployment benefits upon a voluntarily quit, a claimant must prove she acted with ordinary common sense, and that she made reasonable efforts to preserve the employment relationship. Id.  Each case must be examined on an individual basis to understand the exigencies the claimant faced at the time she decided to separate from employment.  Id.

---

[2] Our review is limited to determining whether the Board's necessary findings were supported by substantial evidence or whether the Board erred or violated the petitioner's constitutional rights.  Doyle v. Unemployment Comp. Bd. of Review, 58 A.3d 1288 (Pa. Cmwlth. 2013).  Substantial evidence is evidence which a reasonable mind would accept as adequate to support a conclusion.  Umedman v. Unemployment Comp. Bd. of Review, 52 A.3d 558 (Pa. Cmwlth. 2012).

Whether or not a claimant had necessitous and compelling reasons for terminating her employment is a question of law subject to this Court's plenary review. Id.

Claimant asserts religious beliefs can constitute necessitous and compelling reasons to leave employment. See Mathis v. Unemployment Comp. Bd. of Review, 64 A.3d 293 (Pa. Cmwlth. 2013) (an actual conflict between a claimant's sincerely held religious beliefs and her employment conditions may constitute cause of a necessitous and compelling nature for voluntarily terminating employment). In Mathis, we cited Thomas v. Review Board of the Indiana Employment Security Division, 450 U.S. 707 (1981), a U.S. Supreme Court decision holding that the State of Indiana's denial of unemployment compensation violated a claimant's First Amendment right to free exercise of religion where the claimant, a Jehovah's Witness, quit his job after he was transferred from a roll foundry that produced sheet steel for various industrial uses to a department that fabricated turrets for military tanks. The claimant's religious beliefs prevented him from participating in the direct production of weapons for war. The Thomas Court noted that the claimant's employment, once acceptable, became religiously objectionable because of changed conditions.

Claimant asserts there are two basic issues in determining whether a claimant's religious beliefs constitute cause of a necessitous and compelling nature for a voluntary quit: whether the claimant's beliefs were sincerely held and religious in nature; and, whether or not an actual conflict between those beliefs and the job requirements exist. Monroe v. Unemployment Comp. Bd. of Review, 535 A.2d 1222 (Pa. Cmwlth. 1988).

10

Here, Claimant maintains she meets both tests. First, her religious beliefs are sincere. Claimant was raised a Catholic, and went to a Catholic grade school, high school and college. Catholic teachings opposing abortion are well-known. When Claimant learned of Employer's practice of fetal collection, experimentation and shipments, she immediately contacted her mother, a lay Eucharistic minister, and a spiritual advisor.

Claimant also contacted an organization called "And Then There Were None," which helps provide support and encouragement for people trying to leave the abortion industry. See N.T. at 10; R.R. at 82a. Claimant wanted to keep her job, but she struggled with the fact that Employer engaged in a highly objectionable practice. Claimant further testified she worked on about 25 other projects; she focused on these projects to try and help her deal with GUDMAP. However, as GUDMAP's up and running date approached, Claimant could no longer rationalize it.

Claimant further maintains she meets the second requirement in Monroe by showing that her religious beliefs are in conflict with her job. She testified she could not work at a place or for an employer that deals in aborted fetuses and body parts. Even if Employer transferred her to another department or project, the problem of working for an employer that engaged in such morally and religiously objectionable activity would persist.

11

Claimant also notes that Supervisor and Labor Director each testified Claimant was not eligible for a transfer because she was in her probationary period. Nonetheless, even assuming she could transfer, she would still be working for an employer who engages in religiously objectionable activities.

Further, Claimant argues her situation is similar to Thomas, where the claimant, a Jehovah's Witness, left employment after his employer transferred him to a job that manufactured weapons of war. Similarly, the destruction of human life and sale of fetal body parts is improper as well. As such, Claimant asserts the Board erred in determining an assignment to another project would have been a reasonable and suitable accommodation of her religious objections.

Therefore, Claimant argues that prior notice of her intention to quit, along with the reasons, would not and could not resolve Claimant's deeply held religious objections to Employer's practice of harvesting and collecting aborted fetal body tissue and parts. Consequently, Claimant requests that this Court reverse the Board's determination of ineligibility under Section 402(b) and order that she receive unemployment benefits.

In response, the Board asserts, an employee quitting for religious beliefs or objections is required to inform her employer of such reasons prior to terminating her employment. Curry v. Unemployment Comp. Bd. of Review, 503 A.2d 1007 (Pa. Cmwlth. 1986). Failure to do so constitutes grounds for disqualification under Section 402(b). Id. The purpose of this rule is to provide the employer with an opportunity to offer the employee work that would not infringe on

12

her religious beliefs.  Id.  Here, Claimant, who resigned because she objected to working on GUDMAP for religious and moral reasons, never addressed her concerns with Employer prior to her resignation.  Id.

In addition, the day before she resigned, Claimant asked Supervisor and Labor Director if Employer could transfer her to another position because of her contentious relationship with Supervisor.  Referee's Dec., Finding of Fact (F.F.) No. 19.  The Board contends this conduct is inconsistent with Claimant's position that no transfer could address or resolve her religious objections to Employer's collections of fetal tissue from abortions.

The Board also argues that Claimant misinterprets the U.S. Supreme Court's decision in Thomas.  In Thomas, the claimant searched for a transfer to a department that was not directly armament-related.  However, this transfer did not materialize.  In other words, the claimant's employer did not offer him any "nonweapons work."  Thomas, 450 U.S. at 710.  Here, to the contrary, Supervisor and Labor Director testified that Employer has a policy of accommodating employees for religious reasons, and that there were other projects that did not involve fetal tissue.

**B. Analysis**

Whether a claimant had cause of a necessitous and compelling nature to voluntarily leave her employment is a question of law subject to appellate review.

13

<u>Anne Kearney Astolfi DMD PC v. Unemployment Comp. Bd. of Review</u>, 995 A.2d 1286 (Pa. Cmwlth. 2010). As noted above, an employee who claims she quit for necessitous and compelling reasons must prove: (1) circumstances existed that produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the employee acted with ordinary common sense; and, (4) the employee made a reasonable effort to preserve her employment. <u>Wert v. Unemployment Comp. Bd. of Review</u>, 41 A.3d 937 (Pa. Cmwlth. 2012).

Further the Board, as the ultimate fact-finder, is empowered to resolve all issues of witness credibility, conflicting evidence and evidentiary weight. <u>Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review</u>, 949 A.2d 338 (Pa. Cmwlth. 2008). Also, it is irrelevant whether the record includes evidence that would support findings other than those made by the Board; the proper inquiry is whether the evidence supports the findings actually made. <u>Id.</u> Further, the party prevailing below is entitled to the benefit of all reasonable inferences drawn from the evidence. <u>Id.</u>

Here, the Board found "Claimant did not advise [Supervisor] or [Labor Director] that she had a religious objection to being involved with a project that utilized the tissue of aborted fetuses." F.F. No. 22. This finding is supported by Claimant's testimony. <u>See</u> N.T. at 14-15, 17; R.R. at 86a-87a. Supervisor also testified Claimant did not raise any concern about fetal tissue prior to her resignation. N.T. at 22; R.R. at 94a. Labor Director also testified she was unaware that Claimant had any moral or religious concerns with her work. N.T. at 31; R.R. at 103a.

14

An employee who is compelled to quit on religious grounds must inform her employer of the conflict between her religious beliefs and work duties. Mathis; Curry; Rhodes v. Unemployment Comp. Bd. of Review (Pa. Cmwlth., No. 817 C.D. 2013, filed December 16, 2013) 2013 WL 6630411 (unreported). The purpose of the rule is to give the employer an opportunity to find other work that would not infringe on the employee's exercise of her religious beliefs. Curry; Rhodes.

Here, the Board determined Employer's witnesses credibly testified that Employer could have assigned Claimant to other projects that did not involve fetal tissue. First, Supervisor testified if Claimant had religious or moral problems working on GUDMAP or with fetal tissue, she could have been removed from the project. Employer had plenty of work on other projects. F.F. Nos. 23-24; N.T. at 21; R.R. at 93a. Second, Labor Director testified that if an employee raised a moral objection to a project, Employer's practice is to find the employee another job. F.F. Nos. 23-24; N.T. at 31; R.R. at 103a.

In addition, we disagree with Claimant's contention that the U.S. Supreme Court's decision in Thomas supports her position that a transfer to another position would have been futile because it would not address or resolve Claimant's religious objections to Employer's collections of fetal tissue from abortions. In Thomas, the claimant had no objection to working in the employer's roll foundry, which did not directly produce weapons. However, the employer eventually closed the roll foundry, and its other remaining departments were directly involved in

15

weapons production. Consequently, although the claimant in Thomas searched for a transfer to a department that was not directly armament-related, such a transfer never materialized. Id.

Here, Claimant argues that like the situation in Thomas, no transfer could accommodate her religious and moral objections to Employer's involvement in the collection of fetal tissue from abortions. However, Claimant testified she did not have a religious struggle with approximately 25 other projects she was working on at the same time as GUDMAP. See N.T. at 15; R.R. at 87a. Further, the day before her resignation, Claimant asked Labor Director to move her to another position because of the problematic relationship she had with Supervisor. F.F. No. 19; N.T. at 30; R.R. at 102a.

Consequently, we do not interpret Thomas as supporting Claimant's "futility" argument. Rather, Thomas actually supports the Board's position that a transfer to another project not involving the collection of fetal tissue would be a suitable and reasonable accommodation. To that end, the claimant in Thomas would have accepted "non-weapons" work, had such work been available, regardless of the employer's continued weapons production.

Therefore, we reject Claimant's contention that notice to Employer of her religious and moral objections prior to her resignation would have been a futile act. Employer could have offered Claimant work on many other projects that did not involve the collection or dissemination of fetal tissue. Because Claimant

16

previously worked on these other projects without objection and also sought a transfer the day before her resignation, we believe the Board could determine that a transfer to a project that did not involve fetal tissue would be a suitable and reasonable accommodation. Thomas; Mathis; Curry; Rhodes.

### III. Conclusion

Respectful of Claimant's religious beliefs, we must nevertheless affirm the order of the Board denying Claimant unemployment compensation benefits under Section 402(b) based on her failure to notify Employer of her religious objections to Employer's use of fetal tissue in GUDMAP. Such notification would have provided Employer with an opportunity to accommodate her religious objections by transferring her to a project that did not involve the use of fetal tissue.

ROBERT SIMPSON, Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lori A. Kelly,                       :

                 Petitioner      :

                             :

            v.                 :     No. 286 C.D. 2017

                             :

Unemployment Compensation   :

Board of Review,              :

              Respondent   :

# **O R D E R**

**AND NOW**, this 17th day of October, 2017, for the reasons stated in the foregoing opinion, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

 

                                    _____

                                    ROBERT SIMPSON, Judge