IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Janet E. Decker, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 293 C.D. 2019 |
| | : | SUBMITTED: September 20, 2019 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                         FILED: November 4, 2019

Janet E. Decker (Claimant) petitions for review, *pro se*, of the January 24, 2019 Order of the Unemployment Compensation Board of Review (Board) affirming the decision of a Referee to deny Claimant unemployment compensation (UC) benefits. The Board concluded that Claimant was ineligible for UC benefits under Section 402(b) of the Unemployment Compensation Law (Law)[1] because she voluntarily quit her employment without cause of a necessitous and compelling nature. We affirm the Board's Order.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b). Section 402(b) of the Law provides that an employee shall be ineligible for UC benefits for any week "[i]n which his [or her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b).

## Background

Claimant worked as a part-time commercial cleaner for Class A Cleaning L.L.C. (Employer), a commercial and residential cleaning service, from April 22, 2018 through September 11, 2018. Bd.'s Finding of Fact (F.F.) Nos. 1, 3. Claimant's job duties were to dust, sweep, vacuum, and clean. *Id.* No. 4. Claimant's primary assignment for Employer was to clean the offices of Employer's client, Masco Cabinetry (Masco). *Id.* No. 5.

On September 10, 2018, Claimant's shift was scheduled to begin at 3:00 p.m. *Id.* No. 6. Shortly before beginning her shift, Claimant met with Employer's president, Stanley Nichols, concerning allegations that Claimant had not completed all of her job duties the previous evening. *Id.* No. 7; Notes of Testimony (N.T.), 12/3/18, at 9. During his meeting with Claimant, Mr. Nichols contacted the employee in charge of the Masco account, Kaylie Ingersol, who told Mr. Nichols that Masco was dissatisfied because crumbs had not been vacuumed from an office the previous evening, which attracted ants. Bd.'s F.F. No. 8; N.T., 12/3/18, at 9, 15. Claimant was upset about the allegation that she had failed to complete her assigned work, but she did not inform Mr. Nichols about her dissatisfaction with the allegation. Bd.'s F.F. No. 9.

Around 1:00 a.m. on September 11, 2018, after she had completed her shift, Claimant left a handwritten resignation letter in Mr. Nichols' internal mailbox. *Id.* No. 10; N.T., 12/3/18, at 10-12 & Claimant's Ex. 1. Employer had continuing work available for Claimant had she not resigned. Bd.'s F.F. No. 11.

Claimant filed a claim for UC benefits with the local UC Service Center. The Service Center found that although "Claimant had a necessitous and compelling reason for quitting," she did not inform Employer of her reason and "there was a

reasonable expectation that the Employer could have provided an alternative to resolve the situation." Record (R.) Item No. 5. Thus, the Service Center denied Claimant's claim for UC benefits under Section 402(b) of the Law.

Claimant timely appealed to the Referee, who held a telephone hearing on December 3, 2018. Claimant appeared *pro se* and testified on her own behalf. Employer presented the testimony of its president, Mr. Nichols. Following the hearing, the Referee determined:

> [C]laimant testified [that] she became upset after [Mr. Nichols] made allegations about [C]laimant's failure to perform her job duties. Furthermore, [C]laimant testified [that] she was upset that [Mr. Nichols] had embarrassed her when he contacted [Ms. Ingersol] on September 10, 2018 about complaints which were made by [Masco] about [C]laimant not completing her job duties. Also, [C]laimant testified [that Mr. Nichols] informed her that if he were to remove [C]laimant from [Masco], he was unsure whether he would be able to provide hours to [C]laimant.

> [Mr. Nichols] testified [that] he did not embarrass [C]laimant and wanted to emphasize that [C]laimant is required to perform her job duties and that her failure to perform her job duties could jeopardize [E]mployer's contract with [Masco].

> After a careful review of the testimony and the documentary evidence in the record, the [R]eferee finds [that C]laimant has failed to meet her burden. While the [R]eferee understands [C]laimant's concerns, nevertheless, the [R]eferee finds that [Mr. Nichols] provided credible testimony that he had good cause to critique [C]laimant's job performance. [C]laimant's displeasure with [Mr. Nichols] critiquing her job performance would not warrant [C]laimant being eligible for [UC] benefits.

Ref.'s Order, 12/4/18, at 2-3. The Referee concluded that Claimant failed to establish that she had a necessitous and compelling reason to quit and, thus, affirmed the denial of UC benefits under Section 402(b) of the Law.

3

Claimant timely appealed to the Board, which adopted and incorporated the Referee's Findings of Fact and Conclusions of Law and further concluded:

> [C]laimant asserts that she notified [Mr. Nichols] about why she resigned when she left a note for him on September 11, 2018, the day of [her] separation [from employment]. The Board determines that because the note was a resignation letter and not an attempt to resolve issues with her supervisor, [C]laimant did not attempt to preserve the employment relationship as required by Section 402(b) of the Law.

Bd.'s Order, 1/24/19, at 1. Therefore, the Board affirmed the Referee's decision. Claimant now appeals to this Court.[2]

## Analysis

A claimant who voluntarily terminates her employment has the burden to establish a necessitous and compelling reason for doing so. *Petrill v. Unemployment Comp. Bd. of Review*, 883 A.2d 714, 716 (Pa. Cmwlth. 2005). The claimant must prove that: (1) circumstances existed that produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and (4) the claimant made a reasonable effort to preserve her employment. *Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006).

It is well settled that resentment of a supervisor's reprimand, absent unjust accusations, abusive conduct, or profane language, does not constitute a necessitous and compelling reason to voluntarily terminate one's employment. *Krieger v. Unemployment Comp. Bd. of Review*, 415 A.2d 160, 161 (Pa. Cmwlth. 1980).

---

[2] Our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

4

Furthermore, "an emotional upset over a reprimand imposed by the employer does not as a rule constitute 'cause of a necessitous and compelling nature.'" *Yasgur v. Unemployment Comp. Bd. of Review*, 328 A.2d 908, 910 (Pa. Cmwlth. 1974) (citation omitted).

Here, Claimant contends that she was compelled to quit because Employer created a hostile, uncomfortable work environment and because she was singled out, embarrassed, and humiliated in front of her co-workers.[3] Claimant also asserts that Mr. Nichols unjustifiably threatened her job. We conclude that the record belies these claims.

Contrary to Claimant's contention, the record contains no evidence that Mr. Nichols used harassing or abusive language during his meeting with Claimant on September 10, 2018. Moreover, the meeting occurred behind closed doors, and Mr. Nichols testified that he chose to confront Claimant privately rather than post anything on Masco's communication board. N.T., 12/3/18, at 15.[4] Mr. Nichols described what transpired during the meeting as follows:

---

[3] In her Petition for Appeal to the Referee, Claimant stated that she quit as a result of "being threatened to [lose] my job over some stupid ants that were in a chair and being embarrassed [and] humiliated" by Mr. Nichols. R. Item No. 6.

[4] Mr. Nichols testified:

> [Ms. Ingersol] brought [Masco's complaint] to my attention, and just like as always [sic], I always bring it to the teammate's attention. We are a team and communication is the key. We even have a communication board over at Masco. Instead of [Ms. Ingersol] writing it on the board to save embarrassment, I thought it would be better to bring [Claimant] in[to] the office and talk to her directly, because everybody can see that board at Masco.

N.T., 12/3/18, at 15.

> I just brought it to [Claimant's] attention that we had [received] a complaint from Masco, [which] brought [the complaint] to [Ms. Ingersol's] attention [on] this day, [stating that] there w[ere] crumbs, there was food all over the place that we missed, it was bringing on ants, and [Masco] wanted us to do a better job. And that's basically what I relayed to [Claimant].

*Id.* Mr. Nichols testified that after this discussion, Claimant did not indicate that she was upset, so he was "shock[ed]" when he arrived at work the next morning and learned that Claimant had resigned. *Id.* at 15-16.

As stated above, dissatisfaction with a supervisor's reprimand or criticism is not a necessitous or compelling reason to voluntarily quit. *See Lauffer v. Unemployment Comp. Bd. of Review*, 434 A.2d 249, 251 (Pa. Cmwlth. 1981) (concluding that even if a supervisor's accusations regarding the claimant's work performance were untrue, they were not delivered in an offensive or profane manner and were not so uncalled for as to leave the claimant with no alternative but to resign, as work performance is a legitimate concern of a supervisor). Here, Claimant failed to demonstrate that Mr. Nichols reprimanded her in a profane or offensive manner or that he made unjust accusations about her work performance. As this Court recognized in *Lauffer*, comments directly related to work performance are legitimate concerns of any supervisor and do not amount to a necessitous or compelling cause. *Id.*

We also reject Claimant's contention that Employer had threatened her job. According to Claimant, when Mr. Nichols told her that he did not know where her hours would come from, she believed he was threatening to fire her. However, Mr. Nichols credibly testified:

> The only thing I said was, if Masco drops us from its account, we're not going to have any hours. That's a true fact, that's not a threat. In

6

our contract, we have to keep the tidiness and cleanliness of that account or [Masco] can void the contract.

N.T., 12/3/18, at 16. In fact, Claimant admitted on the record that Mr. Nichols "did not threaten to fire" her during their conversation. *Id.* at 12.

Finally, a claimant who voluntarily quits "must take common sense action to obviate the problem so that . . . she does not have to terminate employment, and this is accomplished by informing one's superiors of the harassing, humiliating[,] or abusive conduct." *Porco v. Unemployment Comp. Bd. of Review*, 828 A.2d 426, 428 (Pa. Cmwlth. 2003). Here, Claimant testified that immediately after she completed her shift on the morning of September 11, 2018, "I came back, and I was just so upset about it, I made the decision that I'm not going to work there any longer." N.T., 12/3/18, at 10. When asked if she spoke with Mr. Nichols about her feelings after their conversation, Claimant replied, "I did not verbally talk to him after that conversation." *Id.* Mr. Nichols also testified that Claimant did not reach out to him regarding her dissatisfaction with the reprimand before submitting her resignation letter. *Id.* at 16.

We conclude that, by quitting shortly after being reprimanded without informing Employer of any alleged harassment or dissatisfaction with the reprimand, Claimant did not make a reasonable effort to preserve her employment. Therefore, we agree with the Board that Claimant failed to satisfy her burden of proving that she had a necessitous and compelling reason to voluntarily quit her employment under Section 402(b) of the Law.[5]

---

[5] In her appellate brief, Claimant makes numerous assertions regarding factual matters that were not presented to either the Referee or the Board. Because such allegations are outside the record, we may not consider them. *See Hollingsworth v. Unemployment Comp. Bd. of Review*, 189 A.3d 1109, 1113 (Pa. Cmwlth. 2018) ("[B]ecause mere allegations are no substitute for record evidence, this Court cannot consider the averments of fact in [the] [c]laimant's brief when

## **Conclusion**

Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

---

determining whether the Board erred in issuing its findings."); *Pa. Tpk. Comm'n v. Unemployment Comp. Bd. of Review*, 991 A.2d 971, 974 (Pa. Cmwlth. 2010) ("This Court may not consider any evidence that is not part of the certified record on appeal.").

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Janet E. Decker, : 
                 Petitioner : 
                 : 
        v. : No. 293 C.D. 2019
                 : 
Unemployment Compensation : 
Board of Review, : 
               Respondent : 

## **O R D E R**

AND NOW, this 4th day of November, 2019, the Order of the Unemployment Compensation Board of Review, dated January 24, 2019, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge