IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diane R. Waters, : 
                    Petitioner :
                                :
        v.                    : No. 439 C.D. 2024
                                : Submitted: March 4, 2025
Unemployment Compensation : 
Board of Review, :
                    Respondent :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE STACY WALLACE, Judge (P.)
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                          FILED: April 7, 2025

Diane R. Waters (Waters), *pro se*, petitions for review of the Unemployment Compensation Board of Review (Board) order mailed January 30, 2024 (Order), finding her ineligible for unemployment compensation (UC) benefits under Section 402(b) of the Unemployment Compensation Law (UC Law).[1] After careful review, we affirm.

## I.    Factual and Procedural Background

Waters was employed as a part-time direct support professional by Kindred

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

Hearts LLP (Employer). Certified Record (C.R.) at 128. Employer assigned Waters to work with two clients in their respective homes and to take the clients on outings or for activities. *Id.* Waters resigned from her employment in mid-December 2020. *Id.*

Waters submitted a claim for UC benefits under the UC Law. The UC Service Center determined Waters did not qualify for benefits under Section 402(b) of the UC Law because she left her job without a necessitous and compelling reason. *Id.* at 23-30. Based on this conclusion, the UC Service Center issued a Disqualifying Separation Determination on January 31, 2022. *Id.* at 23.

Waters appealed to the UC Referee. The Referee held a hearing on July 21, 2022, at which Waters participated with a non-legal representative (Representative). *Id.* at 69, 83. Employer's Chief Executive Officer (CEO) also participated. *Id.* at 74.

The Referee issued a decision (Decision) dated July 26, 2022, affirming the UC Service Center's determination that Waters was ineligible for benefits. *Id.* at 127. The Referee found Waters' job duties "became more difficult and caused more concern[] during the COVID-19 pandemic . . . because she took public transportation, went to client houses, and had problems finding indoor activities in the winter to do with the clients." *Id.* at 128. The Referee acknowledged Waters' difficulties and concerns motivated her to resign. *Id.* However, the Referee concluded Waters' separation from employment was disqualifying under Section 402(b) of the UC Law because she "did not establish that she took specific steps to try to preserve her employment." *Id.* at 128-31. Waters appealed the Referee's Decision to the Board.

2

The Board issued its January 30, 2024 Order affirming the Referee's Decision. *Id.* at 118-19. The Board included the following in its Order:

> [T]he Board adopts and incorporates the Referee's findings and conclusions but adds Finding of Fact 10(a) to reflect that [Waters] did not seek an accommodation or inform [Employer] of concerns relating to COVID-19 prior to leaving work.
>
> On appeal, [Waters] argues that she left her job due to all the restrictions related to [the] COVID-19 pandemic. However, [Waters] did not communicate with [E]mployer or seek an accommodation before resigning. As such, she did not exhaust all reasonable alternatives prior to leaving work as required pursuant to Section 402(b) of the [UC] Law.

*Id.*

Waters petitioned this Court for review of the Board's Order. In her brief, Waters argues the Board erred in concluding she was ineligible for UC benefits and the Referee erred by not "providing more guidance" to her to "produce information" during the hearing. Waters' Br. at 4.

## II. Discussion

This Court's "review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence." *Hope v. Unemployment Comp. Bd. of Rev.*, 308 A.3d 944, 947 n.5 (Pa. Cmwlth. 2024). Substantial evidence is "such relevant evidence which a reasonable mind would accept as adequate to support a conclusion." *Cambria Cnty. Transit Auth. (CamTran) v. Unemployment Comp. Bd. of Rev.*, 201 A.3d 941, 947 (Pa. Cmwlth. 2019) (quoting *W. & S. Life Ins. Co. v. Unemployment Comp. Bd. of Rev.*, 913 A.2d 331, 335 (Pa. Cmwlth. 2006)). The Board is the ultimate fact finder and is entitled to make determinations on witness credibility and evidentiary weight. *Id.* This Court must "'examine the testimony in

the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony' to determine if substantial evidence exists for the Board's findings." *Id.* (quoting *U.S. Banknote Co. v. Unemployment Comp. Bd. of Rev.*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990)).

The Board found Waters ineligible for benefits under Section 402(b) of the UC Law. Section 402(b) of the UC Law provides, in relevant part, an employee is ineligible for UC benefits when her "unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 P.S. § 802(b).

The burden is on the claimant to prove necessitous and compelling reasons for quitting. *Petrill v. Unemployment Comp. Bd. of Rev.*, 883 A.2d 714, 716 (Pa. Cmwlth. 2005). A claimant meets this burden if "1) circumstances existed which produced real and substantial pressure to terminate employment; 2) like circumstances would compel a reasonable person to act in the same manner; 3) she acted with ordinary common sense; and 4) she made a reasonable effort to preserve her employment." *First Fed. Sav. Bank v. Unemployment Comp. Bd. of Rev.*, 957 A.2d 811, 816 (Pa. Cmwlth. 2008) (quoting *Cent. Dauphin Sch. Dist. v. Unemployment Comp. Bd. of Rev.*, 893 A.2d 831, 832 (Pa. Cmwlth. 2006)).

The Referee found Waters did not establish she took specific steps to preserve her employment. Waters argues the Referee should have asked a "guided question" to assist her in testifying in this regard. Waters' Br. at 13. Waters also argues the Referee stopped her Representative from asking questions. *Id.* at 14. Waters claims her Representative "tried asking questions" but the Referee "would stop her by sa[y]ing the question [was] leading and had to be rephrased." *Id.* at 13.

4

Testimony during the hearing addressed Waters' decision to leave her job. Employer's CEO testified Waters "sent a text message to the Program Manager that she was no longer going to be working, that she was doing other things where she didn't have to go out into the community." C.R. at 74. Employer's CEO said she regularly provided public transportation tokens to Waters, but Waters did not discuss with her any concerns about her working conditions. *Id.* at 80. Waters' Representative asked Employer's CEO whether Waters may have informed her direct supervisor about issues with her working conditions, and Employer's CEO confirmed she did not know. *Id.* Waters did not testify about a conversation with her direct supervisor, nor did her direct supervisor provide testimony at the hearing. No evidence at the hearing indicated Waters communicated her concerns to Employer, sought accommodations, or otherwise tried to preserve her employment.

Though the burden was on Waters to establish a necessitous and compelling reason for leaving her job, the record shows the Referee asked Waters questions to assist her in developing her testimony. The Referee asked Waters whether she informed Employer she would be leaving, and she responded, "I can't recall." *Id.* at 70. When the Referee asked Waters whether she informed Employer of a problem finding activities or going places with clients, Waters responded, "No." *Id.* at 72. Additionally, the Referee assisted Waters' Representative in rephrasing and clarifying her questions by saying, "I don't understand the question," and by asking, "what are you asking the witness?" *Id.* at 81-82. When the Representative cross-examined Employer's CEO, the Referee asked if she had any "further questions for the witness." *Id.* at 81. The record does not support Waters' argument the Referee prevented Waters' Representative from asking questions at the hearing.

5

### III. Conclusion

The record contains substantial evidence to support the finding Waters did not make any effort to preserve her employment. Therefore, Waters did not prove a necessitous and compelling cause for resigning. Consequently, we affirm the Board's Order.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Diane R. Waters,                :

         Petitioner   :

                      :

     v.               : No. 439 C.D. 2024

                      :

Unemployment Compensation  :

Board of Review,         :

         Respondent  :

## **O R D E R**

**AND NOW**, this 7th day of April 2025, the January 30, 2024 order of the Unemployment Compensation Board of Review is **AFFIRMED**.

_____

STACY WALLACE, Judge